# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| COBB COUNTY, DEKALB COUNTY, and FULTON COUNTY, GEORGIA., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE BANK, FSB, COUNTRYWIDE WAREHOUSE LENDING, LLC, BAC HOME LOANS SERVICING, LP, MERRILL LYNCH & CO., INC., MERRILL LYNCH MORTGAGE CAPITAL INC., and MERRILL LYNCH MORTGAGE LENDING, INC., <br><br> Defendants. | CIVIL ACTION NO. <br><br> 1:15-CV-04081-LMM |

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

1.     **Description of Case:**

    (a)     **Describe briefly the nature of this action.**

Plaintiffs' Position:

This action seeks damages and injunctive relief pursuant 42 U.S.C. §3613 for Defendants' alleged violations of Sections 804 and 805 of the Fair Housing Act ("FHA"), 42 U.S.C. §§3601, et seq., 3604 & 3605, arising from Defendants' alleged continuing, discriminatory housing practices of "equity stripping," involving the "steering" and targeting of minority mortgage borrowers in Plaintiffs' communities for predatory, higher cost mortgage loans, and related predatory and discriminatory mortgage loan servicing and discriminatory foreclosure activity. Plaintiffs allege that Defendants' equity stripping scheme is continuing to this day is a result of Defendants' loan refinance and modification denials, continuing servicing and foreclosure activity on these loans. *See e.g*., Cmpt, ¶¶385-387, 391, 395, 398, 622. Defendants' foreclosure activity also reflects a stand-alone discriminatory housing practice on its own accord such that Defendants disproportionately foreclose on minority borrower homes to a greater extent than non-minority borrower homes. *See e.g*., Cmpt, ¶¶ 9, 488-517.

Plaintiffs seek compensatory damages resulting from Defendants' conduct, including out-of-pocket costs expended on abandoned and foreclosed properties; lost property values, taxes and other revenues, including mortgage lien assignment recording fees; a reallocation of the Plaintiffs' limited resources; and intangible

harm to the fabric of Plaintiffs' communities, including the loss of its racially integrated character.   Plaintiffs also seek punitive damages and injunctive relief.

Defendants' Position:

This case concerns a single claim under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 *et seq.* Plaintiffs Cobb, DeKalb, and Fulton Counties ("Plaintiffs") allege that Defendants violated the FHA by engaging in a discriminatory "equity stripping" scheme within their borders over the past 15 years.[1]  According to the Plaintiffs' allegations, the scheme started with the intentional targeting of minority borrowers for predatory and non-prime loans, starting in 2000 and continuing through 2008.  *E.g.*, Compl. ¶¶ 87, 121-22, 132, 154-55, 189, 209, 213-14, 221, 256-383.   The scheme's continuation beyond this timeframe is based on Defendants allegedly servicing or foreclosing on these loans in a discriminatory manner.  *See* Compl. ¶¶ 385-421, 550.  Based on these allegations, Plaintiffs allege both intentional discrimination and disparate impact discrimination in violation of the FHA.

---

[1]  Defendants are three "Bank of America" named companies—Bank of America Corporation, Bank of America, N.A., and BAC Home Loans Servicing, L.P. ("Servicing")—four "Countrywide" named companies—Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB ("CWB"), and Countrywide Warehouse Lending, LLC ("CWL")—and three

In their Complaint, Plaintiffs identify two forms of allegedly resulting injury: (1) diminution in property values and tax assessments for foreclosed homes and neighboring homes; and (2) an alleged increase in the cost of governmental services provided to foreclosed, vacant, or abandoned properties. *Id*. ¶¶ 11, 551, 557. Plaintiffs concede that their economic losses are a result of conduct by many other lenders and securitizers (*id.* ¶¶ 84, 566), but contend that Defendants are responsible for the percentage of damages "equal to Defendants' percentage share of predatory, discriminatory mortgage lending and foreclosure activity." *Id*. ¶ 569.

Defendants deny that they have engaged in any discriminatory practices and have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**(b)   Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

Plaintiffs' Position:

Plaintiffs are three county governments within the Atlanta, Georgia, metropolitan area. Defendants are various mortgage lending entities and financial institutions now owned, operated and/or merged into Defendant Bank of America. The Complaint alleges that, both prior to and after their acquisition by Bank of

---

"Merrill Lynch" named companies—Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Capital Inc., and Merrill Lynch Mortgage Lending, Inc.

America, Defendants have engaged, and continue to engage, in the discriminatory housing practices of "equity stripping."

Equity stripping has three interrelated components: a mortgage loan-making component, a securitization component, and a mortgage loan servicing and foreclosure component.  The loan-making component involves originating (and/or funding brokers to originate) predatory, higher cost, first and second lien purchase money mortgage loans, home equity loans or lines of credit, and any subsequent refusal to modify such loans upon the request of eligible borrowers. Defendants' marketing and lending activities were designed to originate as many such mortgage loans as possible, including by steering and directly targeting African American and Latino mortgage borrowers; making such loans regardless of borrower inability to repay them; granting employees and brokers the discretion, and financially incentivizing them, to steer minority borrowers into more costly loans and to set loan pricing features and terms above published rate sheets (to maximize yield spreads); and enabling the approval of such loans by lowering, waiving or circumventing published underwriting standards and guidelines.

The second component of Defendants' discriminatory housing practice of equity stripping involved Defendants' pooling, securitization, and sale of these mortgage loans as residential mortgage-backed securities, while retaining the

mortgage servicing rights.  This process sought to pass the risk of loss of the mortgage loans onto third parties, repeatedly return Defendants' invested capital so they repeatedly could make and fund more such loans, and thereby generate tremendous future fee income from their loan servicing, including default servicing, operations and their foreclosure activities.

The third component of Defendants' equity stripping involves Defendants' continuing loan servicing activity (again including a refusal to refinance loans), strategic loan servicing transfers, and/or loan foreclosure activities on each of the loans for which they are responsible. This perpetuates the discriminatory lending practices, because Defendants' continued monthly servicing of each mortgage loan (e.g., the collection of each monthly mortgage payment, along with the increased interest rates and fees charged) reaffirms and continues the predatory and discriminatory nature of the equity stripping mortgage loans. More importantly, however, Defendants' foreclosure activity reflects a stand-alone discriminatory housing practice on its own accord.  For example, Defendants disproportionately foreclose on minority borrower homes to a greater extent than non-minority borrower homes.

Due to the continuing nature of Defendants' loan refinance denials, loan servicing and foreclosure practices, Defendants' discriminatory, equity stripping,

housing practices will continue into the future until the last discriminatory mortgage loan is fully repaid, or the borrower defaults and is foreclosed upon. Defendants' act of foreclosure itself is the ultimate denial of housing and reflects a stand-alone discriminatory housing practice.

Plaintiffs' object to Defendants' factually inaccurate, grossly misleading, and wholly improper *ad hominem* statements below regarding purported litigation threats, among other misstatements of fact. *See* Fed.R.Civ.P 408(a)(2) (presumption of inadmissibility of "conduct or statements made in compromise negotiations"); *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, No. 1:06-CV-1678-JEC, 2011 WL 4373977, at *4 (N.D. Ga. Sept. 19, 2011) (J., Carnes) (denying request for disclosure of settlement documents).

Defendants' Position:

Defendants strenuously disagree with virtually every allegation made in the Plaintiffs' 300+ page complaint, as well as their general theory of discrimination and injury recited above.  The Defendants do not dispute that the Plaintiffs have alleged an incredibly broad conspiracy theory of systematic discrimination against minority borrowers dating back nearly two decades, but Defendants are unaware of any facts that support that theory.  Defendants have a pending motion to dismiss

that they believe should resolve this action, but if it does not, Defendants look forward to disproving Plaintiffs' theory on the factual record.

Aside from Defendants' universal denial of the discriminatory conduct alleged in the Complaint, the following facts regarding the Plaintiffs' prior notice of their claims in this matter are relevant to the termination of this case on statute of limitation grounds:

One of the Plaintiffs' outside counsel, Mr. James Evangelista, began contacting a Bank of America employee in 2010, threatening to bring a lawsuit against the bank on behalf of Atlanta-area government clients for alleged violations of the Fair Housing Act. Mr. Evangelista periodically contacted the same employee about the likelihood that he was going to file such a suit against Bank of America throughout 2011. On October 18, 2012, Mr. Evangelista did file suit under the Fair Housing Act on behalf of all three Plaintiffs alleging an identical discrimination and injury theory as pled here, but he did so against various HSBC bank entities, not any Bank of America Defendants. *DeKalb County v. HSBC N. Am. Holdings Inc.*, No. 12-cv-03640 (N.D. Ga.). In written discovery in that ongoing case, the Plaintiffs have admitted that each of them retained outside counsel to begin pursuing these FHA cases in 2010. Despite Plaintiffs' retention of counsel in 2010, and Mr. Evangelista's litigation threats that same year against

Bank of America, Plaintiffs waited until November 20, 2015 to file this suit.  This is well outside the Fair Housing Act's two-year statute of limitation, which even in cases of alleged continuing violations begins to run when "facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." *Hipp v. Liberty Nat'l Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001).

(c)   **The legal issues to be tried are as follows:**

Plaintiffs' Position:

1.  Whether Defendants' higher cost mortgage lending, refinance, servicing and/or foreclosure activities, alone or in combination with each other, constitute discriminatory housing practices in violation of 42 U.S.C. § 3601 et seq?

2.  Whether Defendants' intentionally targeted FHA protected minority borrowers in Plaintiffs' communities and neighborhoods for higher cost, equity stripping, mortgage loans?

3.  Whether Defendants' higher cost mortgage lending, refinance, servicing and/or foreclosure activities, alone or in combination with each other, have had an adverse, disparate impact on FHA protected minority borrowers in Plaintiffs' communities and neighborhoods?

4.  Whether Defendants' higher cost mortgage lending, refinance, servicing and/or foreclosure activities, alone or in combination with each other, have made and

continue to make housing unavailable on the basis of race and/or color, in violation of 42 U.S.C. § 3604(a)?

5.  Whether Defendants' higher cost mortgage lending, refinance, servicing and/or foreclosure activities, including their published policies and statements, alone or in combination with each other, have expressed and continue to express a preference on the basis of race and/or color, in violation of 42 U.S.C. § 3604(c)?

6.  Whether Defendants' higher cost mortgage lending, refinance, servicing and/or foreclosure activities, alone or in combination with each other, have provided and continue to provide different terms, conditions and privileges on the basis of race and/or color in connection with the making of residential real estate-related transactions, in violation of 42 U.S.C. § 3605?

7.  Whether Defendants' higher cost mortgage lending, refinance, servicing and/or foreclosure activities, alone or in combination with each other, were, and are, intentional and willful, and/or have been, and are, implemented with callous and reckless disregard for Plaintiffs' federally protected rights?

8.  Whether Defendants concealed their discriminatory mortgage lending, servicing and foreclosure activities?

9.  Whether Plaintiffs have been, and continue to be, harmed by Defendants'

discriminatory higher cost mortgage lending, refinance, servicing and/or foreclosure activities, alone or in combination with each other, and whether Plaintiffs can obtain compensatory and punitive damages, and/or injunctive relief under 42 U.S.C. § 3613?

10. Whether injunctive relief is necessary to prevent further financial and non-financial harm to Plaintiffs?

Defendants' Position:

1. Whether Plaintiffs have a cognizable cause of action;

2. Whether Plaintiffs, as arms of the state of Georgia, can bring suit under the FHA;

3. Whether Plaintiffs are barred by Georgia's free public services doctrine from recovering the costs of providing required governmental services;

4. Whether Plaintiffs are acting *ultra vires* in bringing this action;

5. Whether Defendants who did not originate or service any mortgage loans can be sued under the FHA;

6. Whether the FHA allows claims for discriminatory mortgage loan servicing;

7. Whether Plaintiffs' prior notice of their claims outside of the FHA's two-year statute of limitations period bars this suit under Eleventh Circuit precedent;

8. Whether Plaintiffs' claims are barred by the applicable statute of limitations;

9. Whether the continuing violation theory applies to discrete acts of alleged mortgage lending discrimination;

10. Whether Plaintiffs have stated a disparate impact claim under the pleading standard set forth in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* 135 S. Ct. 2507, 2524 (2015);

11. Whether Plaintiffs can make a *prima facie* case of disparate impact discrimination as required in *Inclusive Communities*, which entails: (i) showing statistically imbalanced lending patterns adversely impacted a minority group; (ii) identifying a "facially-neutral" policy Defendants followed during the same period of time; (iii) showing how that policy is "artificial, arbitrary, and unnecessary;" and (iv) alleging how that policy was a substantial cause of the adverse lending patterns. If so, whether Defendants can provide a justified business necessity for any identified practices;

12. Whether any practices identified by Plaintiffs were in fact discriminatory and prohibited by the FHA;

13. Whether Defendants can be liable under the FHA for loans they did not originate; and

14. Whether the Plaintiffs can causally connect any alleged discrimination by Defendants to any resulting injuries.

(d)      **The cases listed below (include both style and action number) are:**

(1)      **Pending Related Cases:**

Plaintiffs' Position:

*County of Cook v. Bank of America Corporation*, No. 1:14-cv-02280 (N.D. Ill).

*County of Cook v. HSBC, et al*, 1:14-cv-02031(N.D. Ill).

*DeKalb County v. HSBC N. Am. Holdings Inc.*, No. 12-cv-03640 (N.D. Ga.).Defendants' Position:

In addition to the above cases:

*City of Miami v. Bank of Am. Corp.*, No. 1:13-cv-24506 (S.D. Fla. Dec. 13, 2013).  This is a similar municipality FHA discrimination case; the district court granted a motion to dismiss on July 9, 2014, and the Eleventh Circuit Court of Appeals reversed and remanded on September 1, 2015.   A second motion to dismiss is fully briefed and awaiting a hearing on March 11, 2016.

*City of Miami Gardens v. Bank of Am. Corp.*, No. 1:14-cv-22202-KMW (S.D. Fla. June 13, 2014).  This is a similar municipality FHA discrimination case; it was stayed and administratively closed by the district court on November 18, 2014 to await an appeal in the *City of Miami v. Bank of America* action.  Since resolution of the appeal, Miami Gardens has not sought to reopen the case.

(2)   **Previously Adjudicated Related Cases:**

<u>Plaintiffs' Position:</u>

None

<u>Defendants' Position:</u>

*City of Los Angeles v. Bank of Am. Corp.*, No. 2:13-cv-09046-PA-AGR (C.D. Cal. Dec. 6, 2013). This is a similar municipality FHA discrimination case; after statute of limitations-focused discovery, summary judgment was granted to all Bank of America defendants on statute of limitations and lack of injury grounds. The summary judgment decision is currently on appeal to the Ninth Circuit Court of Appeals.

**2.    This case is complex because it possesses one (1) or more of the features listed below (please check):**

<u>Joint Position:</u>

| | | |
|---|---|---|
| _____x\_\_\_\_ | (1) | Unusually large number of parties |
| _____ | (2) | Unusually large number of claims or defenses |
| _____x\_\_\_\_ | (3) | Factual issues are exceptionally complex |
| _____x\_\_\_\_ | (4) | Greater than normal volume of evidence |
| _____x\_\_\_\_ | (5) | Extended discovery period is needed |
| _____x\_\_\_\_ | (6) | Problems locating or preserving evidence |
| _____ | (7) | Pending parallel investigations or action by government |
| _____x\_\_\_\_ | (8) | Multiple use of experts |
| _____ | (9) | Need for discovery outside United States boundaries |
| _____x\_\_\_\_ | (10) | Existence of highly technical issues and proof |
| _____x\_\_\_\_ | (11) | Unusually complex discovery of electronically stored information |

-14-

**3.     Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiffs:          James M. Evangelista, Ga Bar No. 707807
                     David J. Worley, Ga Bar No. 776665
                     Jeffrey R. Harris, Ga. Bar No. 330315
                     Darren Penn, Ga. Bar No. 571322
                     HARRIS PENN LOWRY LLP
                     400 Colony Square
                     1201 Peachtree Street, N.E., Suite 900
                     Atlanta, GA  30361
                     Tel:  (404) 961-7650
                     Fax: (404) 961-7651


Defendants:          Thomas M. Hefferon
                     Matthew S. Sheldon
                     GOODWIN PROCTER LLP
                     901 New York Avenue, NW
                     Washington, DC 20001
                     Tel.: 202-346-4000
                     Fax: 202-346-4444

**4.     Jurisdiction:**

Is there any question regarding this court's jurisdiction?

  _X_ Yes     ___No

If "yes," please attach a statement, not to exceed one (1) page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

**5.     Parties to This Action:**

Plaintiffs' Position:

    **(a)  The following persons are necessary parties who have not been joined:** None.

    **(b)  The following persons are improperly joined as parties:** None.

    **(c)  The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:** None.

Defendants' Position:

    **(a)     The following persons are necessary parties who have not been joined:**

Defendants state that the Plaintiffs base their case on conduct allegedly directed to non-parties, *i.e.* mortgage loans made to their residents by the Defendants.  To the extent this action is not dismissed prior to discovery, evidence concerning those non-party borrowers will be relevant to this action and those non-parties could need to be joined for the resolution of this action.  Defendants also note that Plaintiffs' Complaint identifies the conduct of other mortgage lenders and brokers that are not a party to this action as being relevant and at issue.  *E.g.* Compl. ¶¶ 3, 67-69, 85.  To the extent this action is not dismissed prior to discovery and Plaintiffs pursue those allegations, those non-parties could need to be joined for the resolution of this action.

**(b)** **The following persons are improperly joined as parties:**

- Countrywide Warehouse Lending no longer exists, having been merged into BofA Merrill Lynch Asset Holdings, Inc. effective March 18, 2014. BofA Merrill Lynch Asset Holdings, Inc. is a wholly-owned subsidiary of Merrill Lynch Mortgage Capital Inc.

- Bank of America Corporation, Countrywide Financial Corporation, and Merrill Lynch & Co., Inc. are improperly joined as parties because they are holding companies that neither originate nor service loans.

**(c)** **The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

- "Countrywide Bank, FSB" should be named as follows: "Bank of America, N.A., named here in its own capacity and as successor by *de jure* merger with Countrywide Bank, FSB"

- "BAC Home Loans Servicing, LP" should be named as follows: "Bank of America, N.A., named here in its own capacity and as successor by *de jure* merger with BAC Home Loans Servicing L.P."

- "Merrill Lynch & Co., Inc." should be named as follows: "Bank of America Corporation, named here in its own capacity and as successor by merger with Merrill Lynch & Co., Inc."

**(d)    The parties shall have a continuing duty to inform the court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6.    Amendments to the Pleadings:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of FED. R. CIV. P. 15. Further instructions regarding amendments are contained in LR 15.

(a)    List separately any amendments to the pleadings which the parties anticipate will be necessary:

Joint Position:

The parties do not anticipate any amendments at this time.

(b)    Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

**7.    Filing Times For Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a)    *Motions to Compel:* before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b)    *Summary Judgment Motions:* within thirty (30) days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c)     *Other Limited Motions:* Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d)     *Motions Objecting to Expert Testimony:* <u>Daubert</u> motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

## 8.     Initial Disclosures:

The parties are required to serve initial disclosures in accordance with FED. R. CIV. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.

<u>Joint Position:</u>

At the Rule 26(f) scheduling conference the parties agreed that their Initial Disclosures should occur 30 days after the Court's ruling on Defendants' motion to dismiss.

## 9.     Request for Scheduling Conference:

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

<u>Joint Position:</u>

Both parties request an initial scheduling conference.  The parties agree the scope of initial discovery is a threshold issue that must be resolved in order for this case to move forward should the pending motion to dismiss be denied.

## 10.     Discovery Period:

The discovery period commences thirty (30) days after the appearance of the first defendant by answer to the complaint.  As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this court are assigned to one of the following three (3) discovery tracks: (a) zero (0)-months discovery period, (b) four (4)-months discovery period, and (c) eight (8)-months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

<u>Plaintiffs' Discovery Subjects and Discovery Period Position:</u>

This case should tracked for at least an eight month fact discovery period,

commencing 30 days after the Court's ruling on Defendants' motion to dismiss.

Plaintiff requires discovery on, among other things:

- Defendants' pre- and post-merger corporate, organizational, management reporting line, and information technology (IT) structures, prior to and after Defendant Bank of America acquired the Countrywide and Merrill Lynch Defendants, relevant to identification of material witnesses and proof of liability since their equity stripping activities commenced;

- Defendants' corporate strategies, policies, practices and communications, including the dissemination and enforcement of such policies and practices, regarding residential mortgage lending, pricing, origination, underwriting, purchasing, funding, wholesale lending, securitization, sales, servicing, servicing transfer, and foreclosure practices since their equity stripping activities commenced;

- Defendants' corporate strategies, policies, practices and

communications, including the dissemination and enforcement of such policies and practices, regarding their compensation and other incentives/disincentives of employees and third parties involved in residential mortgage lending, pricing, marketing, origination, underwriting, purchasing, funding, wholesale lending, securitization, sales, servicing, servicing transfer, and foreclosure practices since their equity stripping activities commenced, and the revenues, profits and assets Defendants generated through such activities;

- Defendants' corporate strategies, policies, practices and communications relating to their mortgage loan marketing and product development activities since their equity stripping activities commenced, particularly the policies and practices concerning special targeted groups protected by the FHA;

- Defendants' knowledge regarding, and compliance with, their duties and obligations under the FHA;

- The specific loan terms, borrower race and ethnicity characteristics, underwriting factors and all other loan level identification and financial information recorded, maintained and/or stored by Defendants, and Defendants' mortgage loan servicing and foreclosure information, regarding all 1-4 family residential mortgage loans (whether for first or second lien loans, purchase money loans, or home equity loans or lines of credit) that were originated, purchased, funded, serviced and/or foreclosed upon by Defendants in the Plaintiff Counties at any time since Defendants' equity stripping activities commenced.

- Defendants' knowledge of the likelihood of default on the mortgage loans it made, the impact of specific loan terms on the loan default rate and Defendants' operational strategies designed to capitalize on mortgage payment defaults and foreclosures, including through fees charged to borrowers and entities holding mortgage loans for which Defendants serviced;

- Defendants' compliance, control and/or risk assessment reporting and

communications regarding Defendants' residential mortgage lending, marketing, servicing and foreclosure practices since their equity stripping activities commenced, including regarding the compensation of employees and third parties involved in such matters.

- Documents Defendants have produced in connection with certain federal investigations and related litigation regarding Defendants' violations of the Fair Housing Act for discriminatory mortgage lending, refinance, servicing and/or foreclosure activities; and

- Defendants' compliance with all consent decrees it entered into concerning its mortgage lending, servicing and foreclosure activities that occurred after their equity stripping activities commenced

Defendants' Discovery Subjects and Discovery Period Position:

The Defendants propose a phased discovery approach as further detailed below.

Under Defendants' proposed first phase of discovery, discovery would cover:

1. Plaintiffs' knowledge of their claims prior to filing this Complaint, and their investigation of their claims and the surrounding facts.

2. Plaintiffs' counsel's threats to file FHA litigation against Bank of America dating back to 2010.

3. Whether there is any evidence of any Defendant having violated the FHA within the two-year statute of limitations period through either intentional discrimination or disparate impact. This would include discovery regarding relevant data for mortgage loans originated and serviced during the two-year

period, as well as mortgage lending and servicing policies in place during the two-year period.

4. What mortgage loans, if any, the Plaintiffs believe Defendants originated or serviced within the FHA's two-year statute of limitation in a manner that violated the FHA.

5. What policies, practices or procedures Plaintiffs believe were in place during the FHA's two-year statute of limitations period that were either intentionally discriminatory or were facially-neutral but lead to unintended discriminatory consequences.

Should the case proceed to the second phase of discovery, discovery would cover:

1. Whether there is any evidence of any Defendant having violated the FHA outside of the two-year statute of limitations period.  This would include discovery regarding relevant data for mortgage loans originated and serviced during the two-year period, as well as mortgage lending and servicing policies in place during the two-year period.

2. What mortgage loans, if any, the Plaintiffs believe Defendants originated or serviced outside the FHA's two-year statute of limitation in a manner that violated the FHA.

3. What policies, practices or procedures Plaintiffs believe were in place outside the FHA's two-year statute of limitations period that were either intentionally discriminatory or were facially-neutral but lead to unintended discriminatory consequences.

4. The injuries the Plaintiffs claim they suffered for each specific property that they believe is at issue in this lawsuit, and any supporting evidence the Plaintiffs possess.

5. Evidentiary basis for Plaintiffs' allegations that Defendants engaged in intentional discrimination.

6. Evidentiary basis for Plaintiffs' allegations that their property tax revenue was reduced as a result of Defendants' allegedly discriminatory actions.

7. Information concerning the specific governmental services that Plaintiffs claim increased as a result of Defendants' allegedly discriminatory conduct.

8. Information concerning Plaintiffs' budgets and projections for the provision of relevant governmental services.

9. Information concerning loans originated or serviced in an allegedly discriminatory manner by other industry participants within Plaintiffs' borders during the same timeframe.

10.Information concerning the data and methods utilized for the statistics and regression models included in Plaintiffs' Complaint.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

Plaintiffs' Position:

Plaintiffs anticipate that, given the issues presented and the scope of Defendants' alleged wrongdoing, fact discovery will be extensive and time consuming such that an extended discovery period will be necessary.

Plaintiffs strongly oppose Defendants' proposal below to phase and limit full merits discovery based on Defendants' purported statute of limitations defense. The court in the similar action filed by Cook County against Bank of America, *Cook County v. Bank of America* et al., No. 14-CV-2280 (N.D. Ill) (J. Bucklo), explicitly denied this exact approach to discovery following its ruling denying Defendants' motion to dismiss, as did the same court recently in Cook County's action against HSBC, *County of Cook v. HSBC, et al*, 1:14-cv-02031(N.D. Ill) (J. Lee).  Defendants' position here: (1) is premised on a mischaracterization of the discriminatory housing practices alleged in the Complaint; (2) misapplies and misinterprets the FHA's plain language limitations provision, 42 U.S.C. §3613(a)(1)(A), and the law interpreting it; and (3) relies on the factually

-25-

inapposite cases in the Central District of California and *City of Miami Gardens*, which did not explicitly allege instances of discriminatory conduct within two years before the lawsuit was filed, and where, unlike here, the alleged discriminatory conduct was limited to mortgage lending policies only, did not allege an equity stripping scheme that is inherently continuing by its nature, and did not include loan servicing/foreclosure practices as discriminatory in of themselves. Defendants' proposed phasing of discovery is inappropriate, would be prejudicial to Plaintiff, and is inconsistent with the proceedings in the factually similar pending matters in *Cook County v. Bank of America* et al., No. 14-CV-2280 (N.D. Ill) (J. Bucklo), and *County of Cook v. HSBC, et al*, 1:14-cv-02031(N.D. Ill).

Moreover, Judge Jones of this Court was initially persuaded to follow a bifurcated approach by Defendants in the *DeKalb County v. HSBC N. Am. Holdings Inc.*, No. 12-cv-03640 (N.D. Ga.), in the initial Scheduling Order in that case. That resulted in nothing other than **two years of delay**, during which defendants have not produced a single document whatsoever.

With respect to Defendants' representations to the Court regarding the propriety of phasing discovery here based on the speed of discovery in the *Cook County v. Bank of America* litigation, Defendants have strenuously opposed appropriate discovery of email and electronic data, search terms, and document

custodians. Defendants have not yet identified key officers and employees with relevant knowledge. These delays in discovery have been created by the same Defendants here, and the parties are still negotiating in advance of motions to compel and a court ruling. Defendants have only just produced relevant loan origination and servicing data, on February 16, 2016.

Plaintiff's proposed Scheduling Order is attached as <u>Exhibit A</u>.

<u>Defendants' Position</u>:

This suit largely mirrors an identical set of FHA lawsuits filed by the City of Los Angeles in December 2013 against four different mortgage lenders, including Bank of America.[2]  Those cases provide the blueprint for how to resolve these types of temporally-expansive FHA lawsuits in an efficient and cost-effective manner.  In all four *Los Angeles* cases, the initial phase of discovery was limited to what actually occurred within the FHA's two-year statute of limitations period, *i.e.* what happened in the two years before the complaints were filed.  In those cases, the parties and two different district court judges recognized that a plaintiff must first prove a violation within the FHA's limitations period before it can challenge

---

[2] *See City of Los Angeles v. Bank of America Corporation, et al.*, No. 2:13-cv-09046-PA-AGR (C.D. Cal); *City of Los Angeles v. Citigroup Inc., et al.*, No. 2:13-cv-09090-ODW-RZ (C.D. Cal); *City of Los Angeles v. JP Morgan Chase & Co.*, et

conduct outside the limitations period.  Significantly, this statute of limitations-phased discovery led to the early resolution of *all four cases*.  Both Bank of America and Wells Fargo were granted summary judgment based on the statute of limitations factual records; Los Angeles then voluntarily dismissed with prejudice its suits against two other lenders (Citibank and JP Morgan Chase). *See City of Los Angeles v. Bank of America Corporation,* 2015 WL 4880511 (C.D. Cal. May 11, 2015) (granting summary judgment to Bank of America); *City of Los Angeles v. Wells Fargo & Co.,* 2015 WL 4398858 (C.D. Cal. July 17, 2015) (granting summary judgment to Wells Fargo).

    This same approach has since been adopted by Judge Federico A. Moreno in the U.S. District Court for the Southern District of Florida in a similar FHA suit brought by the City of Miami Gardens against various Wells Fargo entities.  *City of Miami Gardens v. Wells Fargo & Co. et al.*, No. 14-cv-22203 (S.D. Fla. Jan. 19, 2016) [Dkt. 61].  In that case, Judge Moreno ordered an initial phase of discovery focused on statute of limitations issues just this year and Wells Fargo is already scheduled to file a case-dispositive summary judgment motion on March 14, 2016.

    Defendants believe the same two-prong phasing approach used in the *Los Angeles* cases and *Miami Gardens v. Wells Fargo* is the best method to lead to the

_____

al., No. 2:14-cv-04168-ODW-RZ (C.D. Cal); *City of Los Angeles v. Wells Fargo &*

-28-

early resolution of this case or at least properly focus any further necessary discovery.  Defendants propose that the Court order an initial four month phase of discovery ("Phase I") focused solely on statute of limitation issues.  Phase I would focus on two factual issues: (1) whether the Plaintiffs' apparent contemplation of this lawsuit since at least 2010 bars some or all of their claims under Eleventh Circuit precedent; and (2) whether Defendants originated or serviced any mortgage loan within the two-years before the Complaint was filed, *i.e.* since November 2013, in a manner that violated the FHA.  Just as in the *Los Angeles* cases, after this Phase, the parties could file summary judgment motions, if supported by the factual record, to partially or wholly resolve the case.

If any part of Plaintiffs' claims are not time-barred, Defendants propose the parties would immediately commence a six month discovery period to conduct any necessary remaining merits discovery on events occurring prior to November 2013 ("Phase II").

This kind of phasing is all the more appropriate here because of the strong evidence already in the public sphere that the Plaintiffs' claims are time-barred because of their own prior notice dating back at least to 2010.  First, the Plaintiffs' counsel, Mr. James Evangelista, began approaching Bank of America in 2010,

---

*Co.,* No. 2:13-cv-09007-ODW (C.D. Cal.).

including via email, threatening this very type of municipality FHA litigation. Second, discovery in the related *DeKalb County v. HSBC* case has already established that each of the Plaintiffs retained outside counsel in 2010 to begin pursuing this type of suit. *See DeKalb County v. HSBC N. Am. Holdings Inc.*, No. 12-cv-03640, ECF No. 63-1 (N.D. Ga.) (describing declarations by all three Plaintiffs admitting 2010 counsel retention).  It is entirely unclear at this point how the Plaintiffs will be able to argue this suit is not time-barred based on these facts and well-established Eleventh Circuit case law on such notice. *E.g. Hipp*, 252 F.3d at 1222.

The efficiencies to Defendants' approach are self-evident: (1) Defendants' Phase I entails discovery as to conduct in just two years, compared to Plaintiffs' proposal for immediate discovery spanning nearly *two decades* and hundreds of thousands of additional loans; (2) all discovery from Phase I will be necessary for this case and will help crystalize the necessary topics for discovery in Phase II; and (3) no matter the result of Phase I, it will allow both parties to better assess the merits of the case and, potentially, revisit whether any mutually-agreeable settlement can be reached; and (4) Defendants' proposal presents the only possibility that this case can be quickly determined, if the defense succeeds, that

would eliminate the need for months, if not years, of unnecessary discovery, motions, and costs on both the parties and the Court.

The Defendants' phasing proposal is also directly supported by the Manual for Complex Litigation, which counsels that "whether a claim is barred by the statute of limitations" is a "foundational issue[] [that] may preclude the action altogether, and thereby render[s] it subject to early resolution . . . ." § 31.4, p. 548; *see also* § 30.1, p. 521 ("Whether an action or claim is time-barred may be appropriate for early resolution by summary judgment."); § 35.32, pp. 708, 711-12 ("[a]dressing [statute of limitations] issues early in the case can reveal the presence of fatal flaws in the complaint before the court or the parties expend significant resources.").

Defendants note that, contrary to Plaintiffs' statements above, both Los Angeles and Miami Gardens have strenuously argued throughout their respective cases that they alleged (and intended to prove) mortgage discrimination within the FHA's limitations period, just as Plaintiffs here argue.  Los Angeles, in fact, attempted to prove that in discovery, but failed, just as the Defendants expect the claims here will fail on a factual record.

Further, the cases brought by Cook County actually support the need for phasing here.  In the *Cook County v. Bank of America* case, the parties have been

engaged in full merits discovery for over eight (8) months, and the County has yet to take a single deposition or agree to a single email custodian or search term. Cook County's counsel, which also includes the Harris Penn Lowry firm, has already indicated they expect to require a fact discovery extension of several more months in addition to the eleven (11) months under that court's current schedule. This causes Defendants to be skeptical of the Plaintiffs' proposal here to conduct full merits discovery in just one nine (9) month period without any narrowing of the issues.

Finally, neither Defendants nor their counsel have been involved in the *DeKalb v. HSBC* case and so cannot speak to what HSBC has or has not produced there.  But Defendants can reassure this Court that they intend to quickly and vigorously pursue their defense of this action in a phased approach, which includes providing discovery necessary to disprove the Plaintiffs' claims.  Defendants did so in Los Angeles, and they fully intend to do so here as well.

Defendants' proposed deadlines for both Phases, as well as summary judgment and expert issues, are detailed in their proposed Scheduling Order, which is attached as Exhibit B.

**11.    Discovery Limitation:**

**(a)  What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed.**

Plaintiffs' Position:

The Plaintiffs anticipate that the limit on the number of depositions and interrogatories each side may take, as well as the length of depositions, will need to be extended beyond that otherwise limited by the Federal Rules.

Defendants' Position:

If Defendants' phased discovery approach is accepted, Defendants do not anticipate the need to any change any of the traditional limitations on discovery during Phase I.  Plaintiffs' position that they need to exceed these limitations to conduct complete merits discovery further warrants in favor of a phased discovery approach that appropriately focuses the resources of the parties and the Court.

**(b)  Is any party seeking discovery of electronically stored information?**

_____X_____ Yes         _____No

If "yes,"

(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

Plaintiffs' Position:

Plaintiffs are currently aware of issues regarding the availability of ESI, particularly from Defendant Countrywide, that have been acknowledged on the record, by other counsel from the same defense firm here, in Cook County's litigation against Bank of America. Plaintiffs are willing to work with Defendants here to try to resolve such issues as they may present themselves in discovery. Indeed, the parties' in the Cook County action have entered agreed Confidentiality and ESI Protocol stipulations.

<u>Defendants Position:</u>

At this time, the parties have not agreed to any limits on the sources of electronically stored information ("ESI"). Defendants are not currently aware of any issues regarding the availability of ESI. The Defendants note that given the allegations in this case date back to 2000, ESI availability issues, due to archiving or similar issues, may present themselves in discovery depending on the nature of the discovery requests. If that occurs, the parties will attempt to resolve any issues themselves before seeking Court assistance. The parties' counsel have negotiated the terms of an ESI Protocol stipulation in an action brought by Cook County, Illinois, and have agreed to present similar proposed terms to the Court in this case.

(2)     The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g.,

paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

Joint Position:

The parties' counsel have negotiated the terms of an ESI Protocol stipulation in an action brought by Cook County, Illinois, and have agreed to present similar proposed terms to the Court in this case.

## 12.    Other Orders:

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

Joint Position:

**ESI Order**.  As noted above, the parties' counsel have negotiated the terms of an ESI Protocol stipulation in an action brought by Cook County, Illinois, and have agreed to present similar proposed terms to the Court in this case.

**Confidentiality Order**.  The parties also anticipate requesting an order governing the confidentiality of certain discovery materials.

Defendants' Position:

**Scheduling/Discovery Phasing Order**.  As noted above, the Defendants seek phased discovery in this matter, and seek a scheduling order to that effect.

Plaintiffs' Position:

Plaintiffs disagree that bifurcation is appropriate, and seek a traditional Scheduling Order.

The parties intend to discuss this issue with the Court at the Scheduling Conference and are not in agreement on a jointly proposed discovery plan. Instead, the parties each submit their own proposed discovery plans and schedules. Plaintiffs' proposed phased discovery plan and schedule is attached as <u>Exhibit A</u>. Defendants' proposed discovery plan and schedule is attached as <u>Exhibit B</u>.

## 13.   Settlement Potential:

(a)    Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on February 22, 2016, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.

For plaintiff:  Lead counsel (signature):

<u>/s/James M. Evangelista</u>
James M. Evangelista, Ga Bar No. 707807
HARRIS PENN LOWRY LLP
400 Colony Square
1201 Peachtree Street, N.E., Suite 900
Atlanta, GA  30361
Tel:  (404) 961-7650
Fax: (404) 961-7651

Other participants:

Madeline E. McNeeley
HARRIS PENN LOWRY LLP

For defendant: Lead counsel (signature):

/s/Mathew S. Sheldon
GOODWIN PROCTER LLP

/s/Thomas M. Hefferon
GOODWIN PROCTER LLP

Other participants:

/s/ William V. Custer
BRYAN CAVE LLP

(b)    All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(_____) A possibility of settlement before discovery.
(___X___)  A possibility of settlement after discovery.
(_____) A possibility of settlement, but a conference with the judge is needed.
(_____)  No possibility of settlement.

(c)    Counsel (_____) do or (__X_____) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.   The proposed date of the next settlement conference is To Be Determined.

(d)    The following specific problems have created a hindrance to settlement of this case.

Plaintiffs' Position:

        None.

Defendants' Position:

        Based on settlement discussions to-date, Defendants believe that discovery

is necessary on the factual grounds supporting the case (and particularly statute of

limitations issues) before any further settlement discussions could prove

meaningful and fruitful.

**14.    Trial by Magistrate Judge:**

(a)    The parties (____) do consent to having this case tried before a magistrate judge of this court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this ____day of _____, 20___.

(b)    The parties (__X__) do not consent to having this case tried before a magistrate judge of this court.

| | |
|---|---|
| /s/    David J. Worley | /s/   William V. Custer |
| (W.V.C with express permission) | William V. Custer |
| James M. Evangelista | Georgia Bar No. 202910 |
| Georgia Bar No. 707807 | *Bill.Custer@BryanCave.com* |
| David J. Worley | Edwin M. Cook |
| Georgia Bar No. 776665 | Georgia Bar No. 154203 |
| HARRIS PENN LOWRY, LLP | *Edwin.Cook@BryanCave.com* |
| 400 Colony Square, Suite 900 | BRYAN CAVE LLP |
| 1201 Peachtree Street, NE | One Atlantic Center, 14th Floor |
| Atlanta, GA 30361 | 1201 W. Peachtree St., NW |
| Phone: (404) 961-7650 | Atlanta, GA 30309 |
| Fax: (404) 961-7651 | Tel.: 404-572-6600 |
| | Fax: 404-572-6999 |
| Hezekiah Sistrunk, Jr. | |
| Georgia Bar No. 649413 | Thomas M. Hefferon |
| Shean D. Williams | D.C. Bar No. 461750 (pro hac vice) |
| Georgia Bar No. 764139 | *thefferon@goodwinprocter.com* |
| COCHRAN, CHERRY, GIVENS, | Mathew S. Sheldon |
| SMITH, SISTRUNK And SAMS P.C. | D.C. Bar No. 998754 (pro hac vice) |
| 127 Peachtree Street | *msheldon@goodwinprocter.com* |
| Atlanta, GA 30303 | GOODWIN PROCTER LLP |
| Phone: (404) 222-9922 | 901 New York Avenue NW |
| Fax: (404) 222-0170 | Washington, DC 20001 |

*Attorneys for Plaintiffs*
*DEKALB COUNTY, FULTON*
*COUNTY & COBB COUNTY,*
*GEORGIA.*

Thomas G. Sampson, Sr.
Georgia Bar No. 623600
Jeffrey E. Tompkins
Georgia Bar No. 714608
THOMAS KENNEDY SAMPSON &
TOMPKINS LLP
3355 Main Street
Atlanta, GA 30337
Phone: (404) 688-4503
Fax: (404) 761-3224

*Additional Attorneys for PLAINTIFF*
*FULTON COUNTY, GEORGIA*

Tel.: 202-346-4000
Fax: 202-346-4444

*Attorneys for Defendants BANK OF*
*AMERICA CORPORATION, BANK OF*
*AMERICA, N.A., COUNTRYWIDE*
*FINANCIAL CORPORATION,*
*COUNTRYWIDE HOME LOANS, INC.,*
*COUNTRYWIDE BANK, FSB,*
*COUNTRYWIDE WAREHOUSE*
*LENDING, LLC, BAC HOME LOANS*
*SERVICING, LP, MERRILL LYNCH &*
*CO., INC., MERRILL LYNCH*
*MORTGAGE CAPITAL INC., and*
*MERRILL LYNCH MORTGAGE*
*LENDING, INC.*