UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COBB COUNTY, DEKALB COUNTY, and FULTON COUNTY, GEORGIA,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE BANK, FSB, COUNTRYWIDE WAREHOUSE LENDING, LLC, BAC HOME LOANS SERVICING, LP, MERRILL LYNCH & CO., INC., MERRILL LYNCH MORTGAGE CAPITAL INC., and MERRILL LYNCH MORTGAGE LENDING, INC.,<br><br>Defendants. | Civil Action No. 1:15-CV-04081-LMM |

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

# ARGUMENT

## I. The Counties Do Not Dispute The Legal Principles That Prevent Georgia Counties From Bringing Suit Under the FHA.

The Motion demonstrated that the Fair Housing Act ("FHA") has a very specific definition for "Person[s]" who can sue (42 U.S.C. § 3602(d)), the definition does not include "State[s]" (*id.* at §§ 3602(d), (g)), and Georgia Counties are legally treated as part of the State. Mot. at 6-10. The Opposition does not take issue with any of these legal principles, which require the conclusion that the Counties are not within the statutory authorization of those who can bring an FHA lawsuit.

The Counties' sole argument is that the Eleventh Circuit allows this suit because it found the city of Miami can sue under the FHA and, since cities are like counties in Florida, the Eleventh Circuit necessarily decided that Georgia counties can sue too. Opp. at 5 (citing *City of Miami v. Bank of America Corp.*, 800 F.3d 1262 (11th Cir. 2015)). This is plainly incorrect; the Eleventh Circuit in *Miami* did not hold, or even consider, whether States or counties or even cities qualify as a "Person" who can sue under the FHA.

Instead, *Miami* was focused on what kinds of *injuries* make someone "aggrieved" under the FHA (42 U.S.C. § 3602(i)), not whether a government entity can bring such claims if it is "aggrieved". On the injury issue, the Eleventh Circuit held, *inter alia*, that a FHA plaintiff needs to satisfy only the minimum Article III injury test to bring suit, and that even if courts would apply a "zone of interest" test to the FHA, the FHA's "zone" is no narrower than that of Article III. *Miami*, 800 F.3d at 1278. The decision says

absolutely nothing about whether cities satisfy the separately codified definition of "Person[s]" who can sue under the FHA (*see* 42 U.S.C. § 3602(d))—that issue and FHA section were never raised or even *cited* in the *Miami* litigation by any party or court at either the trial or appellate level.

*Miami* is irrelevant to this issue for a further reason because the Counties are simply incorrect where they argue that Florida law treats cities and counties interchangeably, and therefore allowing a Florida city to sue under the FHA allows a Georgia county to sue as well. Opp. at 5. First, even if Florida law did treat cities and counties interchangeably, that does not answer the relevant question in this case, which is whether Georgia counties are arms of the State of Georgia under *Georgia* law. And the Counties do not dispute that Georgia counties are arms of the State of Georgia.

Second, the premise is wrong. Florida law does not treat cities and counties interchangeably. Similar to Georgia law, the Florida Supreme Court has held that Florida "[c]ounties, unlike municipalities, are organized as political subdivisions of the state and constitute a part of the machinery of the state government." *Kaulakis v. Boyd*, 138 So. 2d 505, 507 (Fla. 1962). Just as in Georgia, Florida counties are "arm[s] of the state." *Lykes Bros., Inc. v. Architectural Review Comm'n*, No. 93-cv-264, 1994 WL 16198098, at *1-2 (M.D. Fla. Aug. 3, 1994); Mot. at 6-7. In fact, "one feature which sufficiently distinguishes [Florida cities from counties] is that the counties are under the constitution political divisions of the state, municipalities are not." *McPhee v. Dade Cty.*, 362 So. 2d 74, 76 (Fla. Dist. Ct. App. 1978); *accord City of Miami*

*v. Rosen*, 151 Fla. 677, 682 (1942) ("Municipalities in Florida are not subdivisions of the State as are counties.").

As the FHA limits the class of plaintiffs to "Person[s]", a term which does not include "State[s]", and the Counties do not dispute they are mere arms of the State, the Counties cannot sue under the FHA.

## II. The Counties Cannot Collect Governmental Services Damages.

In the Motion, Defendants explained why Georgia's public services doctrine bars the Counties from seeking to recover governmental services costs, which requires dismissal of half of the Counties' injury theory. Mot. at 29-30. The Counties do not argue that Defendants are wrong, but contend that the FHA preempts the public services doctrine because that state-law principle somehow conflicts with the FHA. Opp. at 27-28. This is incorrect.

The Counties' preemption argument rests on the faulty premise that Georgia lacks the power to deny *itself* remedies and recoveries that might be provided by Congress under a federal cause of action. If sovereignty means anything, it is that a sovereign may restrict its own power. That is exactly what Georgia has done here: deliberately restricting the power of the State, including State political subdivisions, to sue to recover the cost of public services. *See Torres v. Putnam Cty.*, 246 Ga. App. 544 (2000). The Counties' powers to sue, in any context, are expressly derived from and limited by that Georgia law. *See* Ga. Const. art. IX, § 1, ¶ I. The principle that states may police themselves, circumscribing their own powers, is unassailable and central to our constitutional structure. *See, e.g., In re Crane*, 253 Ga. 667, 668

3

(1985) (federal law restricting state power "provides a minimum standard, but the state may be more restrictive under its own constitution").[1]

Even if preemption of the public services doctrine was possible, Congress did not preempt it in the FHA. Obstacle preemption arises only where state law stands as an "obstacle to the accomplishment and execution of the full purposes and objectives" of federal law. *Wyeth v. Levine*, 555 U.S. 555, 563-64 (2009). But obstacle preemption is subject to a "high threshold" because courts must begin with "'the assumption that the historic police powers of the States were not to be superseded' by federal law unless preemption was clearly Congress's purpose." *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 940 (11th Cir. 2013) (quoting *Wyeth*, 555 U.S. at 565). Here, fulfillment of the FHA's anti-discriminatory purpose in no way depends on state entities' ability to sue for their trash collection costs. As noted above, Georgia's public services doctrine has absolutely no effect on any individual's ability to sue under the FHA based on claims of discrimination. 42 U.S.C. § 3613(c)(1). In fact, the doctrine, by itself, does not even prevent Georgia counties from suing under the FHA; it only limits the types of damages they may sue to recover (if they are allowed to sue at all). The public services doctrine simply does not stand as an "obstacle to the accomplishment and execution of the full purposes and objectives" of the FHA.

---

[1] *Accord People v. Tisler*, 469 N.E.2d 147, 161 (Ill. 1984); *McCrory v. State*, 342 So. 2d 897, 900 (Miss. 1977); *Coyle v. Smith*, 113 P. 944, 971 (Okla. 1911).

4

### III. The Counties' FHA Claims Are Time-Barred.

#### A. The Counties Do Not Identify Any Act of Discrimination Within the Limitations Period, As They Must.

As the Motion explained, to state a timely claim the Counties must plead the details of a specific FHA violation that occurred within the two-year limitations period, which the Counties have not done. *See* Mot. at 10-17; *Miami*, 800 F.3d at 1283-84. The Counties make no attempt to point to any allegation in the Complaint identifying a specific instance of discrimination, let alone an instance in the last two years, and so rely entirely on disputing whether they must plead discriminatory acts that were timely. Opp. at 6-18. Primarily, the Counties claim that by using the word "continuing" in their generalized allegations, they have invoked the continuing violation doctrine and thus relieved themselves of the duty to plead any specific act of discrimination within the two years prior to suit. Opp. at 8.

The Counties' position is nonsensical. The FHA is clear that no suit can be maintained unless brought within two years. 42 U.S.C. § 3613(a)(1)(A). As the Eleventh Circuit held in *Miami*, where a complaint does not plead "specific information" regarding a timely act of discrimination, then the Complaint cannot proceed. 800 F.3d at 1283-84 (noting the absence of pleading "specific information" on individual loans, which justified dismissing suit on statute of limitations grounds); Mot. at 11. The Complaint here fails this test because it says nothing specific about what occurred in the two years before filing and instead focuses on lending conduct occurring nearly a decade

5

before. Mot. at 10-14. It certainly does not provide this Court with any information on discriminatory loans that were made in the last two years, or even any information on specific properties associated with such loans.

The Counties attempt to rely on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) and its discussion of the FHA's continuing violation doctrine to gloss over their pleading failures. *See* Opp. at 9. But the allegations in *Havens* highlight the infirmity in the factual allegations here. In *Havens*, the anchoring "timely" act of discrimination was alleged with the utmost specificity: "The complaint identified Paul Coles as a black 'renter plaintiff' who, attempting to rent an apartment from Havens, inquired on July 13, 1978, about the availability of an apartment at the Camelot complex, and was falsely told that no apartments were available." 455 U.S. at 368. The *Havens* plaintiffs' identification of the affected individual, exact nature and location of the discrimination, and specific date on which it occurred stands in stark contrast to the Counties' failure to identify any specific loan or even property address allegedly associated with "discriminatory" loans.

B.  The Counties' Attempts to Distinguish *Miami* Are Unpersuasive.

The Counties appear to recognize that their Complaint fails the "specific information" principle laid out in *Miami* so they make various unsuccessful arguments as to why they should be allowed to plead less detail here.[2] None change the fact the Counties has not filed a timely claim.

---

[2] The Counties' suggestion that their "corroborating statistical data" and "GIS maps pinpointing precise properties" provide the requisite detail, *see* Opp. at 11, is flatly inconsistent with *Miami*'s guidance and even falls short of the

6

First, the Counties argue these basic FHA pleading requirements are somehow absolved by *Miami*'s holding that a municipality has statutory standing. Opp. at 11-12. This odd critique is belied by the *Miami* decision itself, which clearly separates its discussion and holdings on the separate topics of standing and the statute of limitations. 800 F.3d at 1277-84.

Paradoxically, in a footnote, the Counties' ask this Court not to consider *Miami*'s discussion of the statute of limitations issue because that passage in the opinion is *dicta*. Opp. at 13 n.10, 19. Defendants agree the part of the limitations discussion that goes beyond the complaint before that court is *dicta*, but the holding as to whether the complaint was timely was not *dicta*. That holding reaffirms a long-standing principle: FHA claims must be pled with sufficient detail to identify a specific act of discrimination within the limitations period.[3]

The Counties' assert in the same footnote that their Complaint and the *Miami* complaint are somehow materially different, but they are indistinguishable as to the limitation issue. Both the City of Miami and the Counties alleged "continuing" FHA violations, without requisite detail of an

---

more detailed allegations deemed insufficient there. In *Miami*, the city at least listed property addresses allegedly associated with discrimination. 800 F.3d at 1283-84. Here, the Counties allege even less, *i.e.*, dots on maps that alleged "correspond[] with a discrete property address." Opp. at 11 n.8.

[3] The Eleventh Circuit has affirmed the dismissal of discrimination claims on Rule 12(b)(6) motions that had far more detail than the Counties offer here. *See, e.g., Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 810-11 (11th Cir. 2015); *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 938 (11th Cir. 2011).

actual act of discrimination within the two-year limitations period. Moreover, just as the Counties do here, Miami relied heavily on alleging "disproportionately high rate[s] of foreclosure[s]…in minority neighborhoods" as grounds for their theory of continuing violations. *See* Complaint, *City of Miami v. Bank of Am. Corp.*, No. 1:13-cv-24506, 2013 WL 6903721, ¶ 133, *passim* (S.D. Fla. Dec. 13, 2013). For the same reasons the Eleventh Circuit recognized the *Miami* complaint failed, so too does the Counties' Complaint.

Finally, the Counties advance an absurd (and already rejected) interpretation of how the FHA's statute of limitations operates. Opp. at 18-19. They contend that because the allegedly discriminatory loans were made as part of an "equity stripping scheme" designed to deprive borrowers of money throughout the life of the loan, the limitations period on their FHA claim does not even begin to run until every single loan in the purported "scheme" is paid off or foreclosed. Opp. at 16-18. Thus, according to the Counties, even if Bank of America never originated another mortgage loan, and did not even continue to service its existing loans, the Counties could still sue the Defendants for decades. Unsurprisingly, this contention has already been directly—and emphatically—rejected by another court in this District. *DeKalb Cty. v. HSBC N. Am. Holdings Inc.*, No. 1:12-cv-03640, 2015 WL 8699229, at *4 (N.D. Ga. Nov. 16, 2015) (rejecting the Counties' theory that the "statute of limitations had not even begun to run" as it "would subject a defendant to possible suit over the entire life of an allegedly discriminatory loan" and would "be inequitable and clearly not what Congress intended by

8

establishing a two-year limitations period"). Discrimination in lending, if it happened (which is denied), occurred at the loan closing, and any effects of that violation of the FHA—including any so-called "equity stripping"—does not toll the limitations period. *See, e.g.*, *Colquitt v. Mfrs. & Traders Trust Co.*, No. 3:15-cv-00807, 2015 WL 7221046, at *5 (D. Or. Oct. 9, 2015) (holding "loan origination was independently actionable when it was completed[,]" so any "continued ill effects from the original violation…cannot resuscitate Plaintiff's claim") (internal quotation marks and brackets omitted).[4]

The Counties are also incorrect when they claim the FHA, at 42 U.S.C. § 3605(b), allows claims for discriminatory mortgage servicing (or foreclosures), and so the limitations period does not commence until all servicing has ended on all loans. Opp. at 14. This is irreconcilable with the plain language of § 3605, which is focused solely on *lending* conduct and only allows claims involving "making or purchasing of loans or providing other financial assistance." *Id.* at § 3605(b)(1). Servicing is none of these. The

---

[4] *See also Valdez v. JPMorgan Chase Bank, N.A.*, No. 13-cv-2450, 2013 WL 4516366, at *2 (N.D. Cal. Aug. 23, 2013) (continued servicing of loans originated outside the limitations period is not "continuous misconduct that triggers the continuing violation doctrine"); *Ohio Civil Rights Comm'n v. Wells Fargo Bank, N.A.*, No. 1:11-cv-623, 2012 WL 1288489, at *5 (N.D. Ohio Apr. 16, 2012) (same, citing cases). Courts have similarly rejected the Counties' related argument, Opp. at 14, that a foreclosure years after the origination of an allegedly discriminatory loan restarts the limitations clock. *See, e.g.*, *Federer v. Midland*, No. 1:12-cv-2492, 2012 WL 5880916, at *5 (N.D. Ga. Nov. 21, 2012) (allegations that "Defendants failed to cease collection activities, including foreclosure actions" cannot restart the limitations period without "rendering the statute of limitations meaningless").

9

Counties do not attempt to distinguish the cases offered by Defendants, which reject the Counties' position that the FHA encompasses servicing of a loan. Mot. at 14 n.9. While the Counties try to pile up contrary cases, their authorities largely either do not recognize FHA servicing claims under § 3605 or actually focus on a different FHA provision, § 3604, which applies to the "sale or rental of housing" rather than lending. Opp. at 14 n.9.[5]

### C. Under The Eleventh Circuit's *Hipp* Case, The Counties Cannot Invoke the Continuing Violation Doctrine Because They Had Notice Of Their Claims Long Before They Sued.

Only if the Counties can meet *Miami*'s threshold requirement of alleging how at least one loan that "closed within the limitations period" was discriminatory does the auxiliary question arise regarding whether the continuing violation doctrine can make older loans relevant. *See* Mot. at 15-16 (citing cases). Just last week, a court in this District reaffirmed this exact principle. *DeKalb Cty. v. HSBC N. Am. Holdings, Inc.*, No. 1:12-cv-3640, slip op. at 9 (N.D. Ga. Feb. 25, 2016) ("Exhibit A"). Because the Counties cannot meet this threshold requirement, the continuing violation doctrine and alleged conduct prior to 2013 is immaterial for deciding the Motion.

The Motion also demonstrated the Counties cannot invoke the continuing violation doctrine for the independent reason that they knew of

---

[5] The Counties' heavy reliance on *Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000) is misplaced and inconsistent with *Miami*. In the Counties' nearly identical suit against HSBC, Judge Ross has recognized that *Hargraves* cannot be squared with *Miami*, which caused her to reconsider and reverse an earlier statute of limitations interpretation that relied on *Hargraves*. *DeKalb*, 2015 WL 8699229, at *2-7.

10

their claims more than two years before filing suit and simply chose not to bring them. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001); *see also* Mot. at 19-21. The Counties implicitly concede the factual point—their prior knowledge. This is not surprising because these same Counties sued another lender, HSBC, about the same alleged conduct more than three years ago. Then they offer a confused response to the legal point—arguing that the case should not be dismissed under the authority of *Hipp* because the common law discovery rule does not apply to the FHA. This argument misunderstands the Eleventh Circuit's notice ruling in *Hipp* (and other cases), which is very different from the discovery rule.

The discovery rule, where it applies, tolls a statute of limitations such that it does not begin to run until an injury was or reasonably should have been discovered. But this is irrelevant to *Hipp* and the related cases cited by Defendants, which require that in order for the *continuing violation doctrine* to apply "Plaintiffs must have acted diligently in asserting their rights under the FHA." *DeKalb Cty.*, 2015 WL 8699229, at *5 (citing *Hipp*, 252 F.3d at 1222-23); Exhibit A, at 9 (same); *see also Wood v. Briarwinds Condo. Ass'n Bd. of Directors*, 369 F. App'x 1, 4 (11th Cir. 2010) (noting that the discovery rule does not apply to a FHA claim, but that the *Hipp* doctrine does where a continuing violation is alleged).

Another court in this District has already recognized, in *DeKalb v. HSBC*, that the Counties' prior notice of their claims outside the limitations period would prevent their use of the continuing violation doctrine. The

11

Counties' filing of that nearly identical suit more than three years before filing this suit demonstrates that they did not "act[] diligently in asserting their rights under the FHA" here. Thus, the untimely claims must be dismissed with prejudice.

### D. Defendants That Are Not Alleged To Have Done Anything Actionable Must Be Dismissed.

In the Motion, Defendants also demonstrated that the Counties do not allege that any of the various Countrywide or Merrill Lynch defendants, or any of the bank holding company defendants, did anything, discriminatory or otherwise, within the limitations period. *See* Mot. at 17-19 (seeking dismissal of Bank of America Corp., Countrywide Financial Corp., Countrywide Home Loans, Inc. ("CHL"), Countrywide Bank, FSB, Countrywide Warehouse Lending, LLC, Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Capital, Inc., and Merrill Lynch Mortgage Lending, Inc.). Regarding CHL specifically, the Motion showed that the Counties even affirmatively alleged that company *did nothing* since 2008 that could violate the FHA. *See id.* at 18. The Opposition does not dispute any of this. *See* Opp. at 23-26. This is not just an FHA pleading failure, but a basic *Twombly* plausibility failure, as a defendant not alleged to have done anything within a limitations period must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Counties nevertheless oppose dismissal of these Defendants because they allegedly participated, at some point in time, in the purported "equity stripping scheme," and to hold them in the case would be better in light of the FHA's "broad…remedial purpose." Opp. at 23. In essence, the

12

Counties argue that the Court should lump all the Defendants together and credit the Complaint's conclusory allegations that each of the Defendants, in unspecified ways, must have done *something* in furtherance of the Counties' amorphous scheme. *Id.* But courts cannot decide motions to dismiss on such vague theories, they must do so based on specific allegations. The Complaint and the Opposition are entirely silent as to how any of these Defendants are alleged to have done anything in violation of the FHA within the two-year limitations period. As such, these Defendants must be dismissed.

**IV. The Counties Do Not State A Claim For Disparate Impact.**

As detailed in the Motion, the Eleventh Circuit has specifically instructed district courts to carefully examine FHA disparate impact claims in light of the Supreme Court's recent clarification of the relevant pleading and proof standards. *Miami*, 800 F.3d at 1286-87 (citing *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S.Ct. 2507, 2522-24 (2015)). Under those standards, the Complaint does not state a disparate impact cause of action. Mot. at 21-29. The Opposition makes only a brief attempt to address this important issue, which highlights the Complaint's failure to meet *Inclusive Communities*' requirements. Opp. at 28-30.[6]

---

[6] The Counties cite a decision involving Cook County as support on this issue, but that decision only cited *Inclusive Communities* for the proposition that "disparate impact claims are cognizable under the FHA" and never applied its pleading standard. *See Cty. of Cook v. HSBC N. Am. Holdings Inc.*, No. 14-cv-2031, 2015 WL 5768575, at *10 (N.D. Ill. Sept. 30, 2015).

First, as previously discussed, the Counties have not met the minimal requirement of alleging a specific facially-neutral policy. Mot. at 22-25. On this point, the Counties only meekly respond that some of the practices they identified "can also be facially race-neutral." Opp. at 29. But that is not what the Counties actually alleged. Instead, the Complaint unequivocally claims that Defendants are perpetrators of a massive *intentional* discrimination "equity stripping scheme". *E.g.*, Compl. ¶¶ 9, 89, 160-62; *see also* Mot. at 23-24. The entire premise of the Complaint, and its imagined "scheme," is purposeful misconduct targeted at minority communities. Plaintiffs' newfound contention that this is a case about a neutral policy flatly contradicts their 300+ pages of allegations in the Complaint.

Having said little about the neutral policy requirement, the Opposition says nothing at all about the second *Inclusive Communities* requirement—that Plaintiffs allege Defendants had an actionable, neutral policy that was "artificial, arbitrary and unnecessary." Mot. at 25-26. The failure to respond on this point concedes that the Complaint does not state a claim.

Finally, the Opposition offers nothing to show how the Complaint satisfies the Supreme Court's "robust causality" requirement, which must be met "at the pleadings stage" and requires the Counties to allege facts that a specific, neutral policy *caused* a statistically significant disparity. The function of this test is so courts can determine at any early stage if the plaintiff has identified a specific policy that results in a specific type of adverse racial disparity; if not, the claim cannot proceed.

The three sentences in the Opposition devoted to this topic do not even attempt to explain how the Complaint connects a specific policy to a specific imbalance through a chain of causation. Opp. at 29. Instead, the Counties press their pleading strategy of lumping together, in a 300+ page complaint, every single act Defendants have ever taken in the last 16 years, and then separately vaguely claiming these practices *en masse* have resulted in various racial imbalances. This cannot be what the Supreme Court contemplated when it carefully cabined disparate impact claims by instructing courts to employ a "robust causality" standard at the pleadings stage.

Not surprising, the Counties' also do not identify how a disparate impact claim has been pled within the FHA's two-year limitations period. Mot. at 27-29. Here, again, the Opposition offers no rebuttal at all. But just as the Counties must identify a specific act of intentional discrimination within the limitations period in order to press a disparate treatment claim, so too must they identify how all the elements of a disparate impact claim exist within the limitations period. Mot. at 28. This is fatal to their disparate impact theory of recovery.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion and dismiss this case with prejudice.

Respectfully submitted this 4th day of March, 2016.

By: /s/ William V. Custer
WILLIAM V. CUSTER (Ga. Bar No. 202910)
*Bill.Custer@BryanCave.com*

15

EDWIN M. COOK (Ga. Bar No. 154203)
*Edwin.Cook@BryanCave.com*

BRYAN CAVE LLP
One Atlantic Center, 14th Floor
1201 W. Peachtree St., NW
Atlanta, GA 30309
Tel.: 404-572-6600
Fax: 404-572-6999

THOMAS M. HEFFERON (D.C. Bar No. 461750) (pro hac vice)
*thefferon@goodwinprocter.com*
MATHEW S. SHELDON (D.C. Bar No. 998754) (pro hac vice)
*msheldon@goodwinprocter.com*
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, DC 20001
Tel.: 202-346-4000
Fax: 202-346-4444

Attorneys for BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE BANK, FSB, COUNTRYWIDE WAREHOUSE LENDING, LLC, BAC HOME LOANS SERVICING, LP, MERRILL LYNCH & CO., INC., MERRILL LYNCH MORTGAGE CAPITAL INC., and MERRILL LYNCH MORTGAGE LENDING, INC.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this document was prepared in compliance with Northern District of Georgia Local Rule 5.1C using Century Schoolbook 13-point font.

Dated: March 4, 2016       /s/ William V. Custer
　　　　　　　　　　　　　　William V. Custer

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the non-registered participants.

Dated: March 4, 2016        /s/ William V. Custer  
                                           William V. Custer