UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COBB COUNTY, DEKALB COUNTY, and FULTON COUNTY, GEORGIA,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE BANK, FSB, COUNTRYWIDE WAREHOUSE LENDING, LLC, BAC HOME LOANS SERVICING, LP, MERRILL LYNCH & CO., INC., MERRILL LYNCH MORTGAGE CAPITAL INC., and MERRILL LYNCH MORTGAGE LENDING, INC.,<br><br>Defendants. | Civil Action No. 1:15-CV-04081-LMM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO CERTIFY THE SEPTEMBER 18, 2020 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 4

I.   The Supreme Court's *Miami* decision announces a proximate causation standard, but leaves open the question of which injuries are recoverable. ........................................................... 4

II.  In the wake of *Miami*, courts have disagreed widely on how to apply the proximate causation requirement for alleged property tax injuries. .................................................................... 5

III. The Order announces for the first time that a municipality's control over its own property-tax system does not break the causal chain. ............................................................................. 8

LEGAL STANDARD ........................................................................ 10

ARGUMENT ................................................................................... 10

I.   The Order presents controlling questions of law. .................... 10

II.  There is a substantial ground for difference of opinion on both controlling questions of law .................................................. 13

III. An immediate appeal may materially advance the ultimate termination of this litigation. ............................................... 17

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Al-Amin v. Smith*,
   637 F.3d 1192 (11th Cir. 2011)....................................................................... 18

*Bank of Am. Corp. v. City of Miami*,
   137 S. Ct. 1296 (2017).........................................................................*passim*

*Chao v. Meixner*,
   No. 08-cv-0013, 2008 WL 2691019 (N.D. Ga. July 3, 2008) ...................... 13

*City of Miami Gardens v. Wells Fargo & Co.*,
   931 F.3d 1274 (11th Cir. 2019).................................................................... 16

*City of Miami v. Wells Fargo & Co.*,
   923 F.3d 1260 (11th Cir. 2019),
   *vacated as moot sub nom.*
   *Bank of Am. Corp. v. City of Miami*,
   140 S. Ct. 1259 (2020)........................................................................... 5, 7, 8

*City of Oakland v. Wells Fargo & Co.*,
   972 F.3d 1112 (9th Cir. 2020)...................................................... 6, 7, 12, 13

*City of Oakland v. Wells Fargo Bank, N.A.*,
   No. 15-cv-4321, 2018 WL 7575537 (N.D. Cal. Sept. 5, 2018) .................... 12

*City of Phila. v. Wells Fargo & Co.*,
   No. 17-2203, 2018 WL 424451 (E.D. Pa. Jan. 16, 2018) ............................ 14

*City of Sacramento v. Wells Fargo & Co.*,
   No. 18-cv-416, 2019 WL 3975590 (E.D. Cal. Aug. 22, 2019) ................... 6, 8

*Cty. of Cook, Ill. v. Bank of Am. Corp.*,
   No. 14-C-2280, 2018 WL 1561725 (N.D. Ill. Mar. 30, 2018).................. 6, 18

*Cty. of Cook, Ill. v. HSBC N. Am. Holdings, Inc.*,
   314 F. Supp. 3d 950 (N.D. Ill. 2018) ............................................................6

ii

*Cty. of Cook, Ill. v. Wells Fargo & Co.*,
  314 F. Supp. 3d 975 (N.D. Ill. 2018) ............................................................6

*Drummond Co. v. Conrad & Scherer, LLP*,
  885 F.3d 1324 (11th Cir. 2018)............................................................ 10, 17

*Ga. State Conference of the NAACP v.*
*Fayette Cty. Bd. of Comm'rs*,
  No. 11-cv-123, 2012 WL 12861142 (N.D. Ga. Sept. 18, 2012) ................... 10

*Heat Techs., Inc. v. Papierfabrik August Koehler SE*,
  No. 18-cv-1229, 2019 WL 1923663
  (N.D. Ga. Apr. 18, 2019) ............................................................ 10

*Hemi Grp., LLC v. City of N.Y.*,
  559 U.S. 1 (2010)......................................................................5

*Holmes v. Secs. Inv'r Prot. Corp.*,
  503 U.S. 258 (1992)................................................................ 5, 19

*Landcastle Acquisition Corp. v. Renasant Bank*,
  --- F. Supp. 3d ----, 2020 WL 3410348 (N.D. Ga. June 8, 2020)................. 19

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004)........................................................ 11, 18

*Montgomery Cty., Md. v. Bank of Am. Corp.*,
  421 F. Supp. 3d 170 (D. Md. 2019)..................................................... 6, 8, 16

*Ortega v. Bibb Cty. Sch. Dist.*,
  397 F.3d 1321 (11th Cir. 2005)................................................................ 18

*Prince George's Cty., Md. v. Wells Fargo & Co.*,
  397 F. Supp. 3d 752 (D. Md. 2019)..................................................... 6, 8, 16

*Reich v. NationsBank of Ga., N.A.*,
  No. 92-cv-1474, 1995 WL 389614 (N.D. Ga. May 10, 1995) ...................... 17

*In re Scientific-Atl., Inc. Secs. Litig.*,
  No. 01-cv-1950, 2003 WL 25740734 (N.D. Ga. Apr. 15, 2003) ................... 10

*In re Suntrust Banks, Inc. ERISA Litig.,*
  No. 08-cv-3384, 2011 WL 13824............................................................. 10, 19

*Williams v. AFC Enters., Inc.,*
  No. 03-CV-2490, 2003 WL 24100302 (N.D. Ga. Nov. 20, 2003) ................. 13

## STATUTES

28 U.S.C. § 1292(b) .......................................................................*passim*

O.C.G.A. § 36-5-22.1 .......................................................................... 12

O.C.G.A. § 48-5-31.1 ........................................................................... 12

Defendants respectfully submit this memorandum in support of their motion to certify the September 18, 2020 Order on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 100) ("Order") for an immediate appeal under 28 U.S.C. § 1292(b).

## INTRODUCTION

In 2017, the Supreme Court directed the "lower courts" to "define, in the first instance, the contours of proximate cause under the FHA," bounded by conventional "directness principles." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017). Courts carrying out that task in municipal FHA actions like this one are reaching divergent answers on whether municipalities may recover economic damages, and if so, which economic damages are recoverable. In particular, courts disagree over whether, and under what circumstances, a municipality may recover damages to reflect property taxes that it claims to have lost as a result of discriminatory conduct. Some courts have held that injuries to municipal plaintiffs are too remote from the claimed FHA violation, and have specifically disallowed claims for a supposed fall-off in tax revenue because the municipalities themselves control the amount of tax revenue they collect through the decisions of politically accountable officials. For both reasons, these courts have held, damages claims like the Counties' fail to establish proximate cause. Other courts, including this Court, have held that a municipality can plead proximate cause by invoking Hedonic regression analysis—but even these courts are divided over how to treat that statistical tool at the pleading stage.

1

Those threshold legal issues are not resolved by circuit precedent, and this Court's Order resolves them in a way that conflicts squarely with decisions of other courts. Defendants respectfully submit that the court of appeals should have an opportunity to settle the issue, especially since a complete reversal would terminate the Counties' claims for money damages.

Section 1292(b) allows a district court to certify an order for an interlocutory appeal when the order (1) includes a controlling question of law, (2) there is a substantial ground for difference of opinion on that question, and (3) an immediate appeal may materially advance the ultimate termination of the litigation.

All three criteria are satisfied here. The Order presents the following pure, controlling questions of law:

> (1) Does the Counties' control over property taxes, including the authority to set the levy amount and the millage rate, break the asserted causal chain and thus defeat proximate cause?

> (2) Does the Counties' theory of injury extend beyond the "first step" and thus fail to establish proximate cause for any of the requested monetary damages?

Despite the length of the Counties' Second Amended Complaint ("Complaint"), very few facts are necessary for the court of appeals to consider these questions. Indeed, when it comes to the intervening-cause question, the relevant "facts" lie not in the Counties' allegations, but rather the state law prescribing the property tax levy and collection process.

2

There is a "substantial basis for difference of opinion" on both questions. Courts addressing injuries like the Counties' have disagreed on whether economic injuries are recoverable at all, whether lost property taxes are too attenuated an injury to be recoverable, whether a municipality's ability to exercise control over tax rates breaks the causal chain, and whether a municipal plaintiff falls short of demonstrating proximate causation by merely alleging that a Hedonic regression analysis will show the link between a defendant's FHA violations and its loss of property taxes. On each of these issues (encompassed by the two controlling questions presented), the Order creates or deepens a conflict among district courts.

Finally, an immediate appeal may materially advance the ultimate termination of this litigation. An outright reversal would leave the Counties with no claim for damages at all. Even if the Eleventh Circuit held only that the Counties' exercise of their taxing authority is an intervening cause that bars their claims for property-tax damage, that holding would substantially narrow the case: that is the Counties' primary damages theory, and the Court would not need to get bogged down with the complexities associated with isolating property-tax damages for specific properties to specific acts purportedly taken by Defendants. In both respects, an appeal potentially offers considerable savings of "time, effort, and expense."

This Court should certify the Order and give the Eleventh Circuit the opportunity to take up these unsettled issues, which are important not only to the scope of this case but to municipal FHA litigation more broadly.

## BACKGROUND

**I.    The Supreme Court's *Miami* decision announces a proximate causation standard, but leaves open the question of which injuries are recoverable.**

In *Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296 (2017), the Supreme Court announced that "proximate cause under the FHA requires some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 1306 (citation and internal quotation marks omitted). The Court explained that, because "[t]he housing market is interconnected with economic and social life," "[a] violation of the FHA may [] be expected to cause ripples of harm to flow far beyond the defendant's misconduct." *Id.* (citation and internal quotation marks omitted). As Congress did not intend to "provide a remedy wherever those ripples travel," the principle of proximate causation served to limit the type of damages claims that could be brought under the FHA. *Id.*

"The general tendency in these cases, in regard to damages at least, is not to go beyond the first step." *Id.* (citation and internal quotation marks omitted). Whether a damages claim "falls within that first step depends in part on the nature of the statutory cause of action, and an assessment of what

4

is administratively possible and convenient." *Id.* (citation and internal quotation marks omitted).

The proximate cause requirement also forbids a "theory of liability [that] rests on the independent actions of third and even fourth parties." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 15 (2010). A plaintiff must show that the causal chain is free of independent, intervening causes; in other words, that an injury is "attributable to the violation, as distinct from other, independent factors." *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 269 (1992).

## II. In the wake of *Miami*, courts have disagreed widely on how to apply the proximate causation requirement for alleged property tax injuries.

The *Miami* Court left the task of "draw[ing] the precise boundaries of proximate cause under the FHA" and the "contours of proximate cause" to the lower courts for the time being. 137 S. Ct. at 1306. Courts across the country have subsequently reached different results on how the proximate cause "standard applies," particularly as "claims for lost property-tax revenue." *Id.*

There has been universal agreement that *Miami*'s proximate-cause test does not allow municipalities to recover for "increased municipal expenses" purportedly caused by discriminatory loan originations and foreclosures. *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1260, 1295 (11th Cir. 2019) ("*Vacated*

*Miami"), vacated as moot sub nom. Bank of Am. Corp. v. City of Miami*, 140 S. Ct. 1259 (2020).[1]

Court disagree, however, over whether municipalities can recover lost property tax revenue purportedly caused by discriminatory loans and foreclosures under *Miami*'s directness test. At least three courts have rejected outright the notion that allegedly discriminatory loans and foreclosures could proximately cause a municipality's loss of property tax revenue, finding such an injury too remote from the alleged violation.[2]  Notably, these courts have

---

[1] *City of Oakland v. Wells Fargo & Co.*, 972 F.3d 1112, 1136 (9th Cir. 2020); *City of Sacramento v. Wells Fargo & Co.*, No. 18-cv-416, 2019 WL 3975590, at *10-11 (E.D. Cal. Aug. 22, 2019); *Montgomery Cty., Md. v. Bank of Am. Corp.*, 421 F. Supp. 3d 170, 187-88 (D. Md. 2019); *Prince George's Cty., Md. v. Wells Fargo & Co.*, 397 F. Supp. 3d 752, 759-60 (D. Md. 2019); *Cty. of Cook, Ill. v. HSBC N. Am. Holdings, Inc.*, 314 F. Supp. 3d 950, 962-63 (N.D. Ill. 2018) (*"Cook-HSBC"*); *Cty. of Cook, Ill. v. Bank of Am. Corp.*, No. 14-C-2280, 2018 WL 1561725, at *5 (N.D. Ill. Mar. 30, 2018) (*"Cook-Bank of Am."*); *Cty. of Cook, Ill. v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 989 (N.D. Ill. 2018) (*"Cook-Wells"*).

[2] *Cook-HSBC*, 314 F. Supp. 3d at 963-64 (property-tax injury based on diminution in value purportedly caused by lending discrimination "introduces significant concerns about measuring the diminishment in value attributable to HSBC's conduct, as opposed to other external factors"); *Cook-Bank of Am.*, 2018 WL 1561725, at *5 (county's "tax losses and increased costs for county services" are "several steps removed" from even "discriminatory foreclosures," making them "too remote in time, and too contingent on later events, to satisfy the 'first step' directness requirement" required by *Miami*); *Cook-Wells*, 314 F. Supp. 3d at 988-89 (property-tax damages and municipal-services injuries are "precisely the 'ripples' that *City of Miami* cautions 'flow far beyond the defendant's misconduct'").

disagreed with the *Vacated Miami* panel decision about the right way to read the Supreme Court's opinion and the limits on proximate cause.  Order 31 n.9.

One court has expressly held that an intervening cause bars recovery for lost property taxes:  when a municipality controls how much it collects and at what rate property taxes are collected, its control breaks the causal chain and prevents the municipality from pleading proximate causation.  *See* Order at 5, *Cook-Bank of Am.*, No. 14 C 2280, ECF No. 423 (N.D. Ill. Dec. 19, 2019) ("[W]hile it may well be that a decline in the assessed value of affected properties influences the difficult and complex decisions the County must make in the exercise of its taxing authority, numerous other factors—social, political, and economic—necessarily bear on those decisions as well.").

Other courts have employed a looser concept of proximate cause and have allowed claims for lost property taxes to move forward.  For instance, the Eleventh Circuit's vacated decision—which disregarded the Supreme Court's clear instruction that proximate causation requires "some direct relation" of an alleged violation and an injury that falls generally within the "first step"— stated that the proximate cause requirement is satisfied so long as there is a "logical bond" or a "logical continuity" between the violation and injury. *Vacated Miami*, 923 F.3d at 1272.  The Ninth Circuit, too, disregarded the "first step" requirement, settling instead for a "sufficiently close connection." *City of Oakland*, 972 F.3d at 1123 (citation and internal quotation marks omitted). One other district court followed *Vacated Miami* to hold that a municipality

had adequately alleged that the defendant banks caused the municipality's property-tax damages.[3]

Even courts that agree on the looser proximate-cause requirement, however, do not necessarily agree that property-tax injuries are recoverable. Two district courts have adopted *Vacated Miami*'s "logical bond" reasoning but imposed stricter requirements on what a municipal plaintiff must allege to demonstrate proximate cause at the pleadings stage when relying on a statistical analysis to demonstrate causation.[4]

## III. The Order announces for the first time that a municipality's control over its own property-tax system does not break the causal chain.

The Counties here allege that Defendants violated the FHA in originating, servicing, and foreclosing on mortgage loans made to minority borrowers. SAC ¶¶ 143-44, 155-56, 336, 405, 410-13. The Counties claim that these putative FHA violations proximately caused the Counties several forms of injury. Relevant here, they seek to recover the loss of property taxes, from home values going down after foreclosures purportedly caused by Defendants' activities, *id.* ¶¶ 438-57, and the cost of processing foreclosures.

Defendants moved to dismiss the Second Amended Complaint, contending that the Counties had not adequately pleaded proximate cause.

---

[3] *Sacramento*, 2019 WL 3975590, at *6-9.
[4] *Prince George's Cty.*, 397 F. Supp. 3d at 759, 762-63 & n.5; *Montgomery Cty.*, 421 F. Supp. 3d at 185, 189-91.

8

Defendants argued that under the applicable law laid down by the Supreme Court in *Miami*, the injuries were too remote from the alleged violation, *i.e.*, the loss of property taxes did not fall within the "first step" of damages. Defendants also argued that the Counties could not establish a causal link to property-tax receipts in particular, because the Counties themselves make decisions about the tax levy and millage rate that drive the amount of tax revenue and break the causal chain.

As relevant here, this Court denied the motion to dismiss the claims for property-tax and foreclosure-processing damages.  With regard to Defendants' remoteness argument, the Court determined that "Plaintiffs' statistical allegations are not vague or overly conclusory," noting that Plaintiffs alleged "a Hedonic regression analysis will allow them to 'isolate and calculate their property tax damages attributable to Defendants' FHA violations [and] to prove the direct relationship between the two."  Order 27 (citation omitted). The Court then addressed the intervening-cause argument together with a third argument (no allegation of overall tax revenue loss).  *See* Order 29 ("Defendants seek to dispute whether—given Plaintiffs' tax structure—a regression model can be used to ascertain Plaintiffs' purported tax losses, if they suffered any losses at all.").  This Court then concluded that it could not grant dismissal because "Plaintiffs allege that they suffered some decrease in tax revenues as a result of Defendants' conduct."  Order 31.

## LEGAL STANDARD

A district court may certify an order under 28 U.S.C. § 1292(b) for an interlocutory appeal if three requirements are met:  "(1) the subject order 'involves a controlling question of law'; (2) there must be a 'substantial ground for difference of opinion' regarding the controlling question of law; and (3) an immediate appeal from the subject order 'may materially advance the ultimate termination of the litigation.'"  *Heat Techs., Inc. v. Papierfabrik August Koehler SE*, No. 18-cv-1229, 2019 WL 1923663, at *1 (N.D. Ga. Apr. 18, 2019) (May, J.) (citation omitted).   "In simple terms, when deciding whether to allow an interlocutory appeal, the district court should consider the probability that its decision was in error and the time and expense that may be saved by allowing the appeal."  *In re Scientific-Atl., Inc. Secs. Litig.*, No. 01-cv-1950, 2003 WL 25740734, at *1 (N.D. Ga. Apr. 15, 2003).

## ARGUMENT

### I.    The Order presents controlling questions of law.

"[A] 'question of law' . . . is considered 'controlling' if it 'has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine.'"  *In re Suntrust Banks, Inc. ERISA Litig.*, No. 08-cv-3384, 2011 WL 13824, at *2 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004)).  The question need not be dispositive for the entire case, only a "substantial part" of it.  *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1336 (11th Cir. 2018); *see also Ga. State Conference of the NAACP v. Fayette Cty. Bd. of Comm'rs*, No. 11-cv-123, 2012 WL 12861142, at

10

*2 (N.D. Ga. Sept. 18, 2012) ("A question of law is considered 'controlling' if it 'has the potential of substantially accelerating disposition of the litigation,' even if it would not terminate the case." (quoting Moore's Federal Practice—Civil § 203.31 (2012))).

The Order raises two controlling questions of law related to "the precise boundaries of proximate cause under the FHA," *Miami*, 137 S. Ct. at 1306. Those questions are:

> (1) Does the Counties' control over property taxes, including the authority to set the levy amount and the millage rate, break the asserted causal chain and thus defeat proximate cause?

> (2) Does the Counties' theory of injury extend beyond the "first step" and thus fail to establish proximate cause for any of the requested monetary damages?

Both are questions of law that can be decided by the court of appeals.  In *Miami*, for example, the Supreme Court left it to the Eleventh Circuit to "draw the precise boundaries" of proximate causation, and noted that no "other court of appeals [has] weighed in on the issue."  137 S. Ct. at 1306; *see also id.* at 1311 (Thomas, J., concurring in part and dissenting in part) (noting that both cases were "on a motion to dismiss," and remarking that the Supreme Court was just as well positioned as the court of appeals to "evaluat[e] the complaint's proximate-cause theory").

Both questions are also "pure" questions of law that can be decided "quickly and cleanly without having to study the record." *McFarlin*, 381 F.3d at 1258 (citation omitted).  How the Counties set their tax levies and millage

11

rates is undisputed and indisputable, because it is prescribed by state law. O.C.G.A. §§ 36-5-22.1, 48-5-31.1. Indeed, the Counties have acknowledged that they control their own tax levies and millage rates. *See, e.g.*, SAC ¶ 448. The question that the court of appeals will answer is straightforward—whether the Counties' exertion of control is an intervening event that, as a matter of law, precludes the Counties from contending that Defendants proximately caused an injury to their property tax revenue.

The second question (remoteness) is also a pure, controlling question of law. Again, there is nothing fact-intensive about the question. The Counties have alleged that they can use a Hedonic regression analysis to calculate, per property, the exact amount of property-tax damages and foreclosure costs incurred because of Defendants' conduct. The question is whether the *allegation* of that potential regression analysis is sufficient to demonstrate proximate cause, *i.e.*, that there is "some direct relation" between Defendants' conduct and the Counties' Injuries, and whether the Injuries fall within the "first step" of damages. That is a controlling question of law. Indeed, at least one district court and court of appeals has concluded as much. The district court in *City of Oakland* certified the denial of a motion to dismiss the property-tax damages in that case; the court certified its decision because "the Supreme Court deliberately left unspecified the precise contours of [the proximate cause] standard." *City of Oakland v. Wells Fargo Bank, N.A.*, No. 15-cv-4321, 2018 WL 7575537, at *1 (N.D. Cal. Sept. 5, 2018). The Ninth Circuit accepted

the certification and eventually issued a decision on the merits. *See City of Oakland*, 972 F.3d at 1112.

## II. There is a substantial ground for difference of opinion on both controlling questions of law.

A substantial ground for difference of opinion exists when district courts addressing an issue are split, and "[t]he Eleventh Circuit has not ruled on the issue." *Chao v. Meixner*, No. 08-cv-0013, 2008 WL 2691019, at *3 (N.D. Ga. July 3, 2008); *Williams v. AFC Enters., Inc.*, No. 03-CV-2490, 2003 WL 24100302, at *1 (N.D. Ga. Nov. 20, 2003) (granting § 1292(b) certification for a controlling question of law on which "there is no Eleventh Circuit case precisely on point," and on which the district courts "are about evenly split"). This Court recognized that circuit precedent does not control either of these issues, and both issues have already divided other courts considering highly similar municipal FHA cases.

On intervening causes, this Court's conclusion that the Counties can overcome the intervening factor of "Plaintiffs' tax structure" by alleging that "a regression model can be used to ascertain Plaintiffs' purported tax losses," Order 29, lies in stark contrast to Judge Bucklo's decision in *County of Cook v. Bank of America*, No. 14-cv-2280 (N.D. Ill.), which held exactly the opposite. This Court stated that there is a "factual dispute" as to whether the Counties "suffered tax losses that are readily determinable based on Plaintiffs' alleged statistical models," Order 30, whereas there was none in *Cook County*. Defendants respectfully submit that the holding in *Cook County* is not

13

distinguishable on that basis.  While Judge Bucklo did mention that Cook County's overall tax revenue was "relatively stable," that fact played no role in the proximate-cause analysis.  Rather, Judge Bucklo determined that it was "exceedingly difficult to trace causation from the Banks' predatory practices" to "the County's future tax revenues" because there was no way to discern how "a decline in the assessed value of affected properties influences the difficult and complex decisions the County must make in the exercise of its taxing authority."  *See* Order at 5-6, *Cook-Bank of Am.*, No. 14 C 2280, ECF No. 423 (N.D. Ill. Dec. 19, 2019).

As for remoteness, courts have diverged widely over whether a municipality's economic injuries, including property-tax damages, are too remote from an FHA violation because they lie at the end of a causal chain from loan to default to foreclosure to abandonment to devaluation.  Three district courts have held property-tax damages like the Counties' are too remote to be recoverable under *Miami*'s proximate-cause rule.  *See* note 2, *supra*.  A fourth has expressed skepticism that *any* economic damages are recoverable.  *City of Phila. v. Wells Fargo & Co.*, No. 17-2203, 2018 WL 424451, at *6 (E.D. Pa. Jan. 16, 2018) ("The Court admittedly has serious concerns about the viability of the economic injury aspect of the City's claims with regard to proximate cause.").

In addition, while the Supreme Court did not definitively apply the FHA's proximate cause test to Miami's allegations, three Justices of the eight-

Justice *Miami* Court provided their view in a separate opinion:  they would have gone ahead and held "the link between the alleged FHA violation and [Miami's] asserted injuries [was] exceedingly attenuated."  137 S. Ct. at 1311 (Thomas, J., joined by Kennedy and Alito, JJ., concurring in part and dissenting in part).  Even without the presence of "other, independent events that might well have caused the injuries Miami alleges," the chain of causation—linking discriminatory loan practices to defaults, to foreclosures, to vacant houses, to decreased property values, and, eventually, to lower property taxes—made Miami's injuries "too remote from the injurious conduct it ha[d] alleged."  *Id.* at 1311-12.  The Justices warned that "any other conclusion would lead to disquieting consequences."  *Id.* at 1312.  The Justices concluded that Miami's lost property taxes and increased municipal expenses had indistinguishable causes and thus were unrecoverable, full stop.

By contrast, the Ninth Circuit (in a certified § 1292(b) appeal), the *Vacated Miami* panel,[5] and several district courts have determined property-tax injuries are recoverable, so long as the municipality alleges that a Hedonic regression analysis will show "some direct relation" between the violation and

---

[5] Even if the *Vacated Miami* decision remained intact, it would not be dispositive as to whether the FHA's proximate-causation requirement allows the Counties to recover for their lost property taxes here.  The property-tax allegations in *Miami* were fundamentally different from the allegations in this case:  in particular, the City of Miami pleaded nothing about the setting of the property tax levy or the corresponding millage rate.  *See, e.g.*, Compl. ¶¶ 141-150, ECF No. 1, *City of Miami v. Bank of Am. Corp.*, No. 13-cv-24506 (S.D. Fla. filed Dec. 13, 2013).

injury. *See* pp. 7-8, *supra*. But even within that contingent of courts, there is a further division over what a plaintiff must allege about a Hedonic regression analysis in order to survive dismissal. This Court was satisfied with Plaintiffs' allegation that "a Hedonic regression analysis will allow [Plaintiffs] to 'isolate and calculate their property tax damages attributable to Defendants' FHA violations [and] to prove the direct relationship between the two.'" Order 27 (citation omitted). Two district courts, while identifying *Vacated Miami* as persuasive caselaw (before the Supreme Court vacated it), reached the opposite conclusion—that merely alleging a Hedonic regression analysis is not enough to demonstrate that a municipality's property tax injuries are not attenuated, as a municipal plaintiff must "show—not just declare" how the regression analysis will show causation and rule out other causes.[6]

As this Court recognized, the *Vacated Miami* opinion is not binding. Order 26 n.7. And while the Court found the opinion persuasive, *id.*, it also recognized that a number of other courts have expressly disagreed with the way the *Vacated Miami* decision applied proximate cause. Order 30-31 & n.9. The merits question ultimately is which view would persuade a new panel of the Eleventh Circuit, and on that question the divide in the caselaw amply demonstrates a "substantial ground for difference of opinion."[7]

---

[6] *Prince George's Cty.*, 397 F. Supp. 3d at 763-64; *Montgomery Cty.*, 421 F. Supp. 3d at 191.

[7] Notably, two judges of the Eleventh Circuit have already opined in a similar municipal FHA case that it "would be difficult to overstate how misguided

Indeed, courts are divided on multiple lines: courts have disagreed on whether a municipality's power to set tax and millage rates breaks the causal chain, whether proximate causation allows municipalities to recover any economic damages at all, whether a property tax injury is too attenuated from the alleged violation to be recoverable, and whether the mere allegation of a Hedonic regression analysis is enough to show proximate causation for property-tax damages at the pleadings stage. The questions presented will allow the Eleventh Circuit to resolve these differences.

## III. An immediate appeal may materially advance the ultimate termination of this litigation.

To show that an interlocutory appeal may "materially advance the ultimate termination of the litigation," a party need only show that "resolution of the question may reduce the amount of litigation necessary on remand." *Drummond Co.*, 885 F.3d at 1336 (citation omitted). Section 1292(b) does not require as a condition of interlocutory appeal that a reversal necessarily end the *entire* litigation.[8] Rather, so long as an appellate decision will help "avoid

---

[such] litigation has proved to be." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1288 (11th Cir. 2019) (Pryor, J., concurring, joined by Branch, J.), *reh'g denied*, 956 F.3d 1319 (2020), *petition for cert. pending*, No. 20-405 (filed Sept. 24, 2020).

[8] *E.g.*, *Reich v. NationsBank of Ga., N.A.*, No. 92-cv-1474, 1995 WL 389614, at *2 (N.D. Ga. May 10, 1995) (certifying appeal on a standard of review question because "the resolution of this issue may have important implications in the way in which lawyers representing both parties structure their representation").

protracted and expensive litigation" by reducing the "time, effort, and expense of the litigation," it will materially advance the ultimate termination of the litigation. *See McFarlin*, 381 F.3d at 1256, 1259 (citation omitted). Thus, the Eleventh Circuit has regularly accepted and decided appeals presenting the question of what monetary relief is available under the relevant federal statute.[9]

Here, reversal on the questions presented would terminate all the Counties' remaining economic injury claims, which would "materially advance the ultimate termination of the litigation." The Counties have only two remaining claims of economic injury—property taxes and foreclosure processing fees. What the Eleventh Circuit says about an injury having "some direct relation" to an FHA violation and falling within the violation's "first step" will have a material impact on the Counties' ability to recover for both injuries. If the court of appeals deems both injuries to be too attenuated to recover under the FHA, that would "substantially shorten the litigation" and "serve to avoid a trial" on damages. *See McFarlin*, 381 F.3d at 1259.

Reversal on the intervening-cause question alone would also "substantially shorten" the litigation. The Counties' theory of property-tax

---

[9] *See, e.g.*, *Al-Amin v. Smith*, 637 F.3d 1192, 1195 (11th Cir. 2011) (in a § 1292(b) appeal, concluding that the Prison Litigation Reform Act bars recovery for punitive damages); *Ortega v. Bibb Cty. Sch. Dist.*, 397 F.3d 1321, 1326 (11th Cir. 2005) (in a § 1292(b) appeal, holding that "tort-like relief" is not available under IDEA).

18

injury represents the bulk of the Counties' case.  *Cf. Cook-Bank of Am.*, 2018 WL 1561725, at \*5, \*7 (commenting that "tax losses and increased costs for county services" constitute "the bulk of the injuries the County asserts," and expressing skepticism that "foreclosure processing costs [are] worth fighting over").  If the Counties are barred from seeking recovery for that injury, this Court and Defendants would save "time, effort, and expense" of having the trier of fact determine how much property-tax revenue the Counties lost per property as a result of Defendants' actions—in other words, property-tax damages would be one less issue for the jury to consider.  *See In re Suntrust*, 2011 WL 13824, at \*2 ("an interlocutory appeal will materially advance the termination of the litigation if it promises to . . . shorten the time required for trial" (citation and internal quotation marks omitted)).  Indeed, the proximate cause requirement is *intended* to avoid the unnecessary commitment of "time, effort, and expense"—that is why it requires "an assessment of what is administratively possible and convenient."  *See Miami*, 137 S. Ct. at 1306 (citation and internal quotation marks omitted); *see also Holmes*, 503 U.S. at 269 (without a proximate cause requirement, courts would be forced "to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries"); *cf. Landcastle Acquisition Corp. v. Renasant Bank*, --- F. Supp. 3d ----, 2020 WL 3410348, at \*16 (N.D. Ga. June 8, 2020) (resolution of legal question regarding whether damages can be apportioned based on fault under

state law may "materially advance the termination of the litigation," as a post-trial reversal by the court of appeals "could lead to a new trial").

## CONCLUSION

For the reasons set forth above, the Order and the proximate-cause issues raised therein satisfy all of the elements for certification under § 1292(b).  Defendants therefore respectfully request that the Court grant their motion for certification so that the Eleventh Circuit has an opportunity to address this important issue and the two questions presented.

Respectfully submitted this 16th day of October, 2020.

/s/ William V. Custer
William V. Custer
Georgia Bar No. 202910
*Bill.Custer@bclplaw.com*
BRYAN CAVE
LEIGHTON PAISNER LLP
One Atlantic Center, 14th Floor
1201 W. Peachtree St., NW
Atlanta, GA 30309
Tel.: 404-572-6600
Fax: 404-572-6999

Thomas M. Hefferon
D.C. Bar No. 461750 (pro hac vice)
*thefferon@goodwinlaw.com*
Matthew S. Sheldon
D.C. Bar No. 998754 (pro hac vice)
*msheldon@goodwinlaw.com*
Andrew Kim
D.C. Bar No. 1029348 (pro hac vice)

*AndrewKim@goodwinlaw.com*
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, D.C. 20036
Tel.: 202-346-4000
Fax: 202-346-4444

*Attorneys for Defendants BANK OF*
*AMERICA CORPORATION, BANK*
*OF AMERICA, N.A., COUNTRYWIDE*
*FINANCIAL CORPORATION,*
*COUNTRYWIDE HOME LOANS,*
*INC., COUNTRYWIDE BANK, FSB,*
*COUNTRYWIDE WAREHOUSE*
*LENDING, LLC, BAC HOME LOANS*
*SERVICING, LP, MERRILL LYNCH*
*& CO., INC., MERRILL LYNCH*
*MORTGAGE CAPITAL INC., and*
*MERRILL LYNCH MORTGAGE*
*LENDING, INC.*

21

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this document was prepared in compliance with Northern District of Georgia Local Rule 5.1C using Century Schoolbook 13-point font.

Dated:  October 16, 2020        /s/ William V. Custer
                                William V. Custer
                                Ga. Bar No. 202910

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the non-registered participants.

Dated: October 16, 2020        /s/ William V. Custer
                                William V. Custer
                                Ga. Bar No. 202910

22