UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COBB COUNTY, DEKALB COUNTY, and FULTON COUNTY, GEORGIA, <br><br>    Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE BANK, FSB, COUNTRYWIDE WAREHOUSE LENDING, LLC, BAC HOME LOANS SERVICING, LP, MERRILL LYNCH & CO., INC., MERRILL LYNCH MORTGAGE CAPITAL INC., and MERRILL LYNCH MORTGAGE LENDING, INC., <br><br>    Defendants. | CIVIL ACTION <br> NO.: 1:15-CV-04081-LMM |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY THE SEPTEMBER 18, 2020 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

Plaintiffs Cobb County, DeKalb County, and Fulton County, Georgia (collectively, "Counties") respectfully submit this opposition to Defendants' Motion to Certify the September 18, 2020 Order for Interlocutory Appeal Pursuant to 28 U.S.C. §1292 (b). ECF Nos. 106, 106-1.

## INTRODUCTION

Defendants seek certification of this Court's well-reasoned Order (ECF No. 100) (the "Order") on Defendants' Motion to Dismiss the Second Amended Complaint. In its Order, the Court thoroughly examined and drew upon established FHA jurisprudence to deny in large part Defendants' attempts to insulate themselves from liability for the substantial damages their discrimination has caused the Counties.  Relying on decisions from around the country,[1] the Court found that the Counties had adequately alleged proximate cause with regard to both their alleged property tax-related injuries and their foreclosure processing cost

---

[1] *See, e.g., Bank of Am. v. City of Miami,* 137 S.Ct. 1296 (2017); *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1260 (11th Cir. 2019) ("*Miami on Remand*") (vacated as moot *sub nom Wells Fargo & Co. v. City of Miami*, 140 S.Ct. 1259 (2020); *City of Oakland v. Wells Fargo & Co.*, 972 F.3d 1112 (9th Cir. 2020); *City of L.A. v. Citigroup Inc.*, 24 F. Supp. 3d 940 (C.D. Ca. 2014); *Prince George's Cty., Md. v. Wells Fargo & Co.*, 397 F. Supp. 752 (D. Md. 2019); *Montgomery Cty., Md. v. Bank of Am. Corp.*, 421 F. Supp. 170 (D. Md. 2019); *Cty. of Cook, Ill. v. Wells Fargo & Co.*, 314 F. Supp. 3d 975 (N.D. Ill. 2018) ("*Cook/Wells Fargo*"); *Cty. of Cook, Ill. v. Bank of Am. Corp.*, No. 14-c-2280, 2018 WL 1561725 (N.D. Ill. Mar. 30, 2018) ("*Cook/Bank of Am.*"); *Cty. of Cook, Ill. v. HSBC N. Am. Hldgs.,* 314 F. Supp. Ed 950 (N.D. Ill. 2018) ("*Cook/HSBC*").

injuries.  Order at 28, 32, 36.

Displeased with this Court's faithful application of the law, Defendants now try to foment grounds for appeal under 28 U.S.C. §1292(b). Defendants, however, provide no grounds for certifying the Court's Order, other than a bald misapplication of distinguishable case law.  Defendants put forth two claimed "controlling questions of law" that are, in actuality, questions of mixed law and fact at best, and seek an impermissible advisory opinion at worst.  They argue that there is a "substantial ground for difference of opinion" on those two questions, but any reasonable reading of the case law shows that the majority of courts across the country is, in fact, in agreement. Finally, Defendants claim that an interlocutory appeal would somehow speed resolution of the case despite the fact that (1) based on FHA jurisprudence, they would almost surely lose on appeal, (2) a favorable ruling on appeal would not dispose of the entire case in any event, and (3) the appeal would certainly add months to this already protracted litigation.

## LEGAL STANDARD

There is a "strong presumption against interlocutory appeals." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008).  The Eleventh Circuit has warned against "too expansive use of the §1292(b) exception to [the final judgment rule]." *Rindfleisch v. Gentiva Health Svcs.*, 24 F. Supp. 3d

1234, 1237 (N.D. Ga. 2013) (quoting *McFarlin v. Conseco Svcs., LLC*, 381 F.3d 1251, 1259) (11th Cir. 2004)). Interlocutory appeals under 28 U.S.C. §1292(b) are therefore generally disfavored and should be granted only in "exceptional cases where a decision of the appeal may avoid protracted and expensive litigation." *McFarlin*, 381 F.3d at 56 (internal quotations and citations omitted). *See also Rindfleisch*, 24 F. Supp. 3d at 1237 (denying certification); *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2020 WL 3489371, at *1 (S.D. Fla. June 26, 2020) ("the Eleventh Circuit considers liberal use of §1292(b) to be bad policy, as it may promote piecemeal appeals"). A "mere question as to the correctness of the ruling" is insufficient to certify an order for appeal under Section 1292(b). *McFarlin*, 381 F.3d at 1256 (internal quotations and citations omitted).

Courts therefore may not certify an order for interlocutory appeal under Section 1292(b) unless the order "involves a controlling question of law as to which there is substantial ground for difference of an opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). *See also McFarlin*, 381 F.3d at 1255-56 (vacating prior order permitting interlocutory appeal under §1292(b) because the case "present[ed] a textbook example of when §1292(b) discretionary jurisdiction should not be exercised"). "This standard is conjunctive, meaning that if any

elements are not satisfied, the Court must deny interlocutory review." *Havana Docks Corp.*, 2020 WL 3489371, at *2 (internal quotations and citations omitted).

For the reasons set forth herein, Defendants fail to satisfy even one of these requirements for interlocutory review. Their Motion should therefore be denied.

## **ARGUMENT**

### I.      **Defendants Fail to Present A Controlling Question of Law.**

A "controlling question of law" must be "an abstract legal issue or what might be called one of pure law, matters the court of appeals can decide quickly and cleanly without having to study the record." *McFarlin*, 381 F.3d at 1258 (internal citations and quotations omitted). Case-specific factual questions are not appropriate for interlocutory review. *Mamani v. Berzain,* 825 F.3d 1304, 1312 (11th Cir. 2016). Therefore, orders that pose "questions the decision of which requires rooting through the record in search of the facts or of genuine issues of fact" should not be certified under Section 1292(b). *McFarlin*, 381 F.3d at 1258 (internal citations and quotations omitted)(stating that where "the controlling issues are questions of fact, or, more precisely, questions as to whether genuine issues of material fact remain to be tried, the federal scheme does not provide for an immediate appeal").

Both questions Defendants pose fail this standard. Defendants' first

proposed question is:

> Does the Counties' control over property taxes, including the authority to set the levy amount and the millage rate, break the asserted causal chain and thus defeat proximate cause?

Motion at 11.

Defendants seek to challenge the Court's ruling that the Counties adequately alleged proximate cause with regard to their property tax-related damages because Defendants contend that the Counties exert control over their tax levies and millage rate. Defendants then argue that if their contention is true, the Counties' control somehow serves as an intervening factor breaking the chain of proximate causation. Motion at 11-12.

As the SAC alleges, however, the Counties do not have unfettered discretion to "control" their tax levies. SAC ¶449. This Court has already recognized as much. Order at 29 ("Plaintiffs assert that Georgia counties 'do not have unfettered ability to increase millage rates,' and their tax assessors 'take . . . reduced [home] prices into account as comparable sales to help establish market value, i.e., property values' when setting millage rates"); Order at 32 ("Plaintiffs contend that the millage rate increases 'have legal and practical caps'").[2] The parameters of

---

[2] This Court appropriately accepted as true the allegation that the Counties do not have unfettered discretion to set their tax levies. Order at 29-30 ("[c]onstruing Plaintiffs' allegations as true, the Court must conclude that Plaintiffs have suffered

these legal and practical caps to set millage rates are factual questions best left to the trial court and present the type of factual question inappropriate for interlocutory review. *McFarlin*, 381 F.3d at 1258.

More importantly, Defendants' entire argument is fatally flawed because the Counties' challenged control of their tax levies at issue is ***an adjustment after the damage Defendants already have caused***. As the Complaint alleges, the millage rate adjustments at issue, if they occur at all, are an ***after the fact response*** to a declining property tax base that results from lost property values due to Defendants' foreclosures. *See* Am Cmplt. ¶¶ 441-43, 448-49. To make their argument, Defendants would have to show facts (or law) that the Counties' abilities to set the millage rates for property taxes is somehow an intervening step between Defendants' discriminatory foreclosures and the resulting decline in the value of the affected properties.  Simply put, this is not logically, factually, or legally possible, particularly given that the standard for proximate cause here only requires the Counties to show "some direct relation" between Defendants'

---

tax losses that are readily determinable based on Plaintiffs' alleged statistical models"), quoting *Find What Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011), for the rule that on a motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  As a practical matter, the Eleventh Circuit would likewise be constrained by this rule should this Court certify its Order for interlocutory review.

discriminatory practices and the Counties' resulting tax damages, and intervening events can occur. *See, e.g., Bank of Am. v. City of Miami,* 137 S.Ct. at 1306 ("proximate cause under the FHA requires some direct relation between the injury asserted and the injurious conduct alleged"); *Miami on Remand*, 923 F.3d at 1272-73 (same; and explaining that "Supreme Court precedent shows that an intervening step will not vitiate proximate cause in all instances"); *City of Oakland,* 972 F.3d at 1130 (same).

Defendants cite two Georgia statutes, O.C.G.A. §§ 36-5-22.1 and 48-5-31.1, which they claim evidence the Counties' control over property taxes.  Neither of those authorities supports the contention that any such control somehow acts to intervene between a foreclosure and the resulting impact of that foreclosure in establishing the assessed value of the property.  Indeed, when determining the fair market value of property for tax purposes, Georgia law requires a tax assessor to consider "Bank sales, other financial institution owned sales, or distressed sales, or any combination thereof, of comparable real property."  O.C.G.A. §48-5-3(B)(iv).

Georgia law establishes the exact opposite of Defendants' contention here. In *DeKalb County Board Of Tax Assessors v. Astor Atl., LLC*, 826 S.E.2d 685 (Ga. App. 2019), the Georgia Court of Appeals held that the DeKalb County Board of Tax Assessors "was precluded" from taxing real property "at fair market values

higher than the amounts paid at the public [foreclosure] auctions." *Id.* at 688. The Counties plainly do not have the kind of omnipotent ability to levy taxes that Defendants argue. *See, e.g., Clayton Cty. v. Sexton*, 538 S.E.2d 737, 738 (Ga. 2000) (acknowledging that the adoption of millage rates by a county is subject to judicial review).

At the very least, whether a County has "control" over its tax levy, and to what extent, would require the appellate court to parse state statutory and case law and apply it to the undeveloped facts of this case. This, again, would not only require an in-depth examination of Georgia local government tax law and the tax assessment activities on each property affected by Defendants' foreclosures, but also would require the Eleventh Circuit to "root[] through the record in search of facts[,]" which is inappropriate on interlocutory review. *Mamani*, 825 F.3d at 1312.[3]

---

[3] Because the question of whether the Counties have unfettered discretion is a factual question that cannot be reviewed under Section 1292(b), the actual question before the Eleventh Circuit, more properly stated, would be a hypothetical: "***If*** the Counties have control over property taxes, including the authority to set the levy amount and the millage rate, would that authority break the asserted causal chain and thus defeat proximate cause?" Answering this question would require the Eleventh Circuit to issue an impermissible advisory opinion. *See, e.g., Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("the federal courts . . . do not render advisory opinions"); *Miller v. F.C.C.*, 66 F.3d 1140, 1145 (11th Cir. 1995) ("petitioners are posing a hypothetical question, the answer to which would be an [impermissible] advisory opinion"); *Havana Docks Corp. v. Norwegian Cruise Line Hldgs., Ltd.*,

The second question posed by Defendants fares no better. Defendants initially state the question as:

> Does the Counties' theory of injury extend beyond the "first step" and thus fail to establish proximate cause for any of the requested monetary damages?

Motion at 11. Defendants then rephrase the question as follows:

> [W]hether the *allegation* of that potential regression analysis is sufficient to demonstrate proximate cause, *i.e.*, that there is "some direct relation" between Defendants' conduct and the Counties' Injuries, and whether the Injuries fall within the "first step" of damages.

Motion at 12 (emphasis in original).

Defendants seek to forestall any plaintiff in any FHA case ever being able to use regression analysis to demonstrate the causal link between the alleged discriminatory conduct and the plaintiff's alleged injury. Putting aside the absurdity of that position,[4] Defendants ignore the truth that questions about

---

No. 19-cv-23591, 2020 WL 3433147, at *3 (S.D. Fla. June 23, 2020) ("the issue presented is not appropriate for interlocutory review because it would require the Eleventh Circuit to either delve into the record to address the facts of the instant case and to issue an advisory opinion"). This is most assuredly not the type of pure question of law suitable for interlocutory appeal.

[4] As set forth in Section II *infra*, there is no substantial ground for difference of opinion that plaintiffs whose allegations are similar to the Counties' allegations here satisfy the pleading standard for proximate cause by alleging that their

regression analyses are inherently factual questions. *See Bazemore v. Friday*, 478 U.S. 385, 400 (1986) ("Whether, in fact, such a regression analysis does carry the plaintiffs' ultimate burden *will depend in a given case on the factual context of each case in light of all the evidence presented by both the plaintiff and the defendant*") (emphasis added). Indeed, in its Order, the Court repeatedly confirmed that Defendants' attacks on the Counties' pleading of proximate cause with regard to their tax-related damages were "factual dispute[s], not . . . legal one[s]." Order at 29-32.   As the Court stated, "[t]here could be a battle of the experts down the line over whether the regression analysis really shows what the [Counties] say it does, but . . . that would be for a later stage of the litigation."  Order at 32-33. Whether and how a regression analysis can show "some direct relation" between Defendants' discriminatory conduct and the Counties' property tax damages[5] is

---

damages can be attributed to defendants and precisely calculated using Hedonic regression analysis.

[5] Defendants state that "[t]he Counties have alleged that they can use a Hedonic regression analysis to calculate, per property, the exact amount of property-tax damage and foreclosure costs incurred because of Defendants' conduct."  Motion at 12.  This statement is false in regard to the Counties' foreclosure costs. The Counties pled, and this Court found, that "[f]oreclosure is the final process in the discriminatory equity-stripping cycle that Plaintiffs allege Defendants have perpetrated against FHA-protected minority residents and, as a result, Plaintiffs' costs in processing those foreclosures would be a direct first-step consequence of that cycle." Order at 35-36.  Thus, Defendants' proposed questions do not even address this Court's ruling regarding foreclosure processing costs.

thus a question of fact that is inappropriate for interlocutory review. *See McFarlin*, 381 F.3d at 1258 (factual questions are inappropriate for interlocutory review).

The Eleventh Circuit has directed that to be a controlling question of law, "[t]he legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *McFarlin*, 381 F.3d at 1259. Questions that require the appellate court "to search deep into the record in order to discern the facts of the underlying case" do not meet muster. *Havana Docks Corp. v. Carnival Corp.,* No. 19-cv-21724, 2020 WL 3489371, at *2 (S.D. Fla. June 26, 2020). Both questions posed here, which require an examination of facts particular to this case, are therefore "[t]he antithesis of a proper 1292(b) appeal" because they "turn[] on whether there is a genuine issue of fact." *McFarlin*, 381 F.3d at 1259.

**II.    There Is No Substantial Ground for Difference of Opinion on Either Question Posited by Defendants.**

A substantial ground for difference of opinion as to a question of law does not exist unless "there is serious doubt as to how it should be decided." *Havana Docks Corp.*, 2020 WL 3489371, at *1. Defendants bear the burden of showing that the questions they posit are "(1) . . . difficult and of first impression, (2) a difference of opinion as to the issue[s] exists within the controlling circuit, or (3)

the circuits are split on the issue[s]." *Ga. St. Conf. of the NAACP v. Fayette Cty. Bd. Of Comm'rs*, No. 3:11-cv-123, 2012 WL 12861142, at *2 (N.D. Ga. Sept. 18, 2012); *see also Havana Docks Corp.*, 2020 WL 3489371, at *2.  Defendants have failed to show that any of these situations is present here.

First, the district courts in the Eleventh Circuit are not split on this issue.  No other district court in this Circuit has yet ruled on these precise issues.

Second, the questions that Defendants pose are not difficult questions of first impression.  Numerous district courts[6] and two Circuit Courts of Appeal[7] have ruled on these issues (and those two Circuit Courts were in agreement, thus negating the third possible situation—a split among the circuits —that could create a substantial ground for difference of opinion).  Despite Defendants' misleading analysis of these cases, the reasoning behind the majority of those courts' rulings supports this Court's Order.

The Ninth Circuit explained that it could "confidently conclude that the FHA's proximate-cause requirement is sufficiently broad and inclusive to

---

[6] *See, e.g., City of L.A.*, 24 F. Supp. 3d 940; *Prince George's Cty.*, 397 F. Supp. 3d 752 (D. Md. 2019); *Montgomery Cty.*, 421 F. Supp. 3d 170; *Cook/Wells Fargo*, 314 F. Supp. 3d 975; *Cook/Bank of Am.*, 2018 WL 1561725; *Cook/HSBC,* 314 F. Supp. 3d 950.

[7] *See Miami on Remand*, 923 F.3d 1260 (11th Cir. 2019); *City of Oakland*, 972 F.3d 1112.

encompass aggregate, city-wide injuries" and found proximate cause adequately alleged where "[t]hrough sophisticated and well-explained statistical regression analysis, [the plaintiff] has plausibly alleged that predatory loans issued by [the defendant] that caused injury to individual borrowers, namely in the form of foreclosures, also necessarily injured the [plaintiff] because the foreclosures caused a respective drop in property values and in turn reduced the property-tax revenues" which "established some direct relation and continuity between its reduced property-tax revenues and [defendant's] predatory loans." *City of Oakland*, 972 F.3d at 1124, 1132-33.[8] *See also Miami on Remand*, 923 F.3d 1260.

This Court examined both Circuit Court decisions in its Order and found that they support a ruling that the Counties adequately alleged proximate cause with respect to their property tax injuries because, like the plaintiffs in those cases, the Counties "allege that a Hedonic regression analysis will allow them to isolate

---

[8] Indeed, the Ninth Circuit answered the actual question put forth by Defendants here—namely whether municipalities can *never* plead proximate cause with respect to economic injuries, even if they can show attribution and precisely calculate their damages with regression analysis: "[a]dopting [Defendant's] categorical proximate cause requirement" *i.e.* a rigid requirement of "immediate injury"—"would require this court to contravene decades of established Supreme Court precedent on standing under the FHA. . . . Under [Defendant's] categorical proximate-cause requirement, none of the plaintiffs in *Gladstone, Trafficante,* or *Havens* would have been able to recover for the indirect injuries they suffered under the FHA.  We decline [Defendant's] invitation to ignore the mandates of the Supreme Court").   The Ninth Circuit's analysis shows that there can be no substantial disagreement. *City of Oakland,* 972 F.3d at 1130-31.

and calculate their property tax damages attributable to Defendants' FHA violations and to prove the direct relationship between the two." Order at 26-28.[9]

Of course, the Ninth Circuit's decision, as an out-of-circuit case, is not binding precedent, but the Court may still rely on its reasoning as persuasive authority.   The Eleventh Circuit's decision in *Miami* is not binding precedent because Miami voluntarily and unilaterally withdrew its claims, thus leading the Supreme Court to vacate the opinion as moot.   There is no reasonable basis, however, to believe the Eleventh Circuit would disavow its own prior recent ruling in a substantially similar case, especially given that the only other Circuit Court to address the same issues is in full agreement with the Eleventh Circuit.[10]

---

[9] The Court appropriately relied on the reasoning of the vacated decision in *Miami on Remand*.   *See, e.g., Cty. of L.A. v. Davis*, 440 U.S. 625, 646, n.10 (1979) (Powell, J. dissenting) ("Although a decision vacating a judgment necessarily prevents the opinion of the lower court from being the law of the case, the expressions of the court below on the merits, if not reversed . . . and until contrary authority is decided, are likely to be viewed as persuasive authority if not governing law of the [] Circuit"); *see also, e.g., U.S. v. Articles of Drugs Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) ("It is true that vacating a decision because of supervening mootness does not destroy its precedential effect.   The purpose of setting aside a decision on that ground is only to prevent the decision from having res judicata or collateral estoppel effect in future cases").

[10] There can be no substantial ground for difference of opinion if the appellate court is in "complete and unequivocal agreement with the district court." *McFarlin v. Conseco Svcs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004).   Defendants cite the concurring opinion of Judge Pryor in *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1288 (11th Cir. 2019) to speculate—cynically and self-servingly—

Although neither Circuit Court's opinion is binding precedent here, "questions of first impression or the absence of binding authority on the issue, without more, are insufficient to demonstrate a substantial ground for difference of opinion." *Havana Docks Corp.*, 2020 WL 3489371, at *2 (*citing, inter alia, In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). When there is an absence of binding authority on an issue, "the district court should measure the weight of opposing arguments to the disputed ruling in deciding whether there is a substantial ground for dispute." *Havana Docks Corp.*, 2020 WL 3489371, at *2; *Ga. St. Conf. of the NAACP v. Fayette Cty. Bd. Of Comm'rs*, No. 3:11-cv-123, 2012 WL 12861142, at *2 (N.D. Ga. Sept. 18, 2012) (quoting *In re Flor*, 79 F.3d 281, 284 (2nd Cir. 1996)) ("the district court has a duty 'to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is

---

that the Eleventh Circuit would disagree with its prior ruling in *Miami on Remand* because two judges felt that litigation of *that case* was "misguided" because the concurring judges believed the plaintiff would be unable to prevail on the merits based on an absence of evidence of any FHA discrimination at summary judgment. *Id.* In fact, on summary judgment the court found that plaintiffs had not been able to establish a genuine issue of material fact as to their *standing* to bring an FHA claim. ***The court specifically noted that the plaintiff had failed to conduct any kind of statistical regression analysis to establish injury and causation*** for standing and likely "could not do so in the light of the paucity of allegedly discriminatory loans identified by the [plaintiff]." *Id.* at 1283-84 Nowhere does any judge on the panel even suggest that a plaintiff cannot satisfy proximate cause pleading requirements with regard to its economic injuries by showing how those injuries can be attributed and quantified through Hedonic regression analysis.

truly one on  which there is a *substantial* ground for dispute'").

The weight of authority shows that there is not a substantial ground for dispute on these issues.  Most courts addressing virtually identical pleadings have found that substantially similar complaints adequately alleged proximate cause with regard to both property tax-related claims and foreclosure processing claims. *See, e.g., City of Oakland*, 972 F.3d at 1130-31 (tax damages adequately pled); *Miami on Remand*, 923 F.3d 1260 (tax damages adequately pled); *City of Sacramento v. Wells Fargo & Co.*, No. 2:18-cv-00416, 2019 WL 3975590, at * 6-7 (E.D. Ca. Aug. 22, 2019) (finding sufficient the city plaintiff's allegations regarding its ability to use Hedonic regression analysis to establish proximate cause); *City of L.A.*, 24 F. Supp. 3d 940; *Prince George's Cty.*, 397 F. Supp. 3d 752 (D. Md. 2019) (foreclosure processing costs adequately pled); *Montgomery Cty.*, 421 F. Supp. 3d 170 (same); *Cook/Wells Fargo*, 314 F. Supp. 3d 975 (same); *Cook/Bank of Am.*, 2018 WL 1561725; *Cook/HSBC,* 314 F. Supp. Ed 950 (same).

Other courts have signaled their tacit agreement that particularized allegations about the ability to attribute and calculate damages through Hedonic regression analysis establish proximate cause at the pleading stage. *See Prince George's Cty,* 397 F. Supp. 3d at 762 (D. Md. 2019); *Montgomery Cty.,* 421 F. Supp. 3d at 191. The complaints at issue in the District of Maryland were "not as

specific as those in *Miami*" and here, and "merely allege[d] that '[r]outinely maintained property tax and other financial data allow precise calculation of the property tax revenues Plaintiffs have lost as a direct result of Defendants' discriminatory equity-stripping activities.'" *Prince George's Cty.*, 397 F. Supp. 3d at 762; *see also Montgomery Cty.*, 421 F. Supp. 3d at 191 (D. Md. 2019) (holding that similarly "vague allegations" were insufficient to establish proximate cause). The courts there, however, recognized that the plaintiffs may be able to overcome the shortcomings in their initial complaints with amended allegations potentially regarding Hedonic regression analysis and specifically allowed those plaintiffs to replead their proximate cause allegations with more specificity. *Prince George's Cty.,* 397 F. Supp. 3d at 767; *Montgomery Cty.*, 421 F. Supp. 3d at 193.[11] By allowing those plaintiffs to replead, the courts in Maryland—far from demonstrating a grounds for substantial disagreement—were signaling their tacit agreement with the weight of authority regarding the requirements for pleading proximate cause with respect to property tax-related damages in FHA cases like this one.

Defendants are thus left with only a handful of cases, all from the Northern

---

[11] The plaintiffs in both cases have availed themselves of this opportunity and have filed amended complaints to address the courts' concerns. Briefing on the defendants' motions to dismiss these cases is complete, and the parties are awaiting rulings on the motions to dismiss the amended complaints.

District of Illinois, that have found that county plaintiffs did not adequately allege

proximate cause with regard to their property tax-related damages and did not

allow repleading to bring those allegations in line with what the majority of courts

have now determined is adequate to allege proximate cause.[12] *See Cook/Bank of*

*Am.*, 2018 WL 1561725, at * 5-6; *Cook/WF*, 314 F. Supp. 3d 975; *Cook/HSBC* 314

F. Supp. 3d at 950.  Despite Defendants' attempts to twist the rulings, the courts

there did not rule that Hedonic regression analysis could *never* suffice to establish

proximate cause in these cases.  On the motions to dismiss in those cases, none of

the courts considered complaints alleging the ability to establish proximate cause

through Hedonic regression analysis. One court explained that the complaint at

issue, which did not allege the ability to isolate and calculate damages with a

---

[12] Defendants also cite *City of Phila. v. Wells Fargo & Co.*, No. 17-2203, 2018 WL 424451, at *6 (E.D. Pa. Jan. 16, 2018) for the proposition that the court "expressed skepticism that *any* economic damages are recoverable." Motion at 14.  Of course, any suggestion that no economic damages are recoverable in an FHA action does not pass the straight face test and only serves to underscore Defendants' desperate and unsupported position.  Putting aside the incredulity of Defendants' suggestion, the court in *City of Philadelphia* was ruling only on proximate cause with regard to the plaintiff's non-economic injuries and certainly did not hold that a municipal plaintiff can never establish proximate cause for economic injuries.  *City of Phila.*, 2018 WL 424451, at *6 ("[b]ecause the City plausibly pleads proximate cause for its non-economic injuries, the question of whether it also adequately pleads proximate cause for its economic injuries need not be reached at this juncture"). The court's *dicta* there about its "concerns" regarding the "viability of the economic injury aspect" of the plaintiff's claims simply does not rise to the level of creating a substantial difference of opinion regarding the ability to plead proximate cause in a case like this one.  *Id.*

Hedonic regression analysis, "pleaded insufficient facts to establish that its claim for lost property tax revenue is sufficiently direct." *Cook/HSBC*, 314 F. Supp. 3d at 950.

Moreover, this Court has already analyzed these cases and found that the courts there ruled on easily distinguishable facts. Order at 30-31. For example, the court in the *Cook/Bank of Am.* case relied heavily on the fact that the county plaintiff there alleged no reduction in its aggregate property tax receipts, distinguishing the present case. *Cook/Bank of Am.*, No. 14-C-2280 (Sept. 21, 2020)*,* ECF No. 524, at 2 (emphasis added) (denying plaintiff's motion to certify order denying leave to amend complaint to add allegations regarding Hedonic regression analysis for interlocutory appeal because "the tax injuries the County claimed were inchoate to the extent they were ***based on unrealized declines in individual property values that did not affect the County's aggregate property tax revenues***"); *Cook/Bank of Am.*, No. 14-C-2280 (Dec. 19, 2019)*,* ECF No. 423 at 3 (emphasis added) (denying motion to reconsider order dismissing property tax-related claims because "***the County does not allege any decline in its aggregate tax revenues as a result of defendants' discrimination***").[13]

---

[13] The Counties here do not believe that the absence of a reduction in aggregate tax receipts is in any way fatal to a claim like theirs. *See, e.g., City of L.A. v Citigroup, Inc.*, 24 F. Supp. 3d 940, 948 (C.D. Cal. 2004) ("Even if L.A.'s total property-tax

In addition, this Court noted in its Order that Defendants had "pointed the Court to no precedent holding" that "tax assessor discretion serves [as] an independent, intervening role that breaks the chain of proximate causation" on the Counties' property tax-related injuries. Order at 32. And courts have roundly observed that wooden "step-counting" to manufacture intervening steps to destroy proximate causation is anathema to the FHA's broad language and Congress's intent in enacting the FHA. *See, e.g., City of Sacramento*, 2019 WL 3975590, at * 6-7; *Miami on Remand*, 923 F.3d at 1273-76.

Defendants still cite no precedent that would support such a ruling. Though they attempt to rely on Judge Bucklo's ruling in the *Cook/BOA* case, the court there did not hold that there can be no proximate cause if counties have some discretion in setting property taxes. Indeed, Judge Bucklo's later ruling denying Cook County's motion seeking interlocutory review of the dismissal of their property tax-related claims makes plain that the driving force behind the court's

revenue increased during the relevant time period, L.A. may still have been injured . . . because [the] property tax revenue could have been higher absent the discriminatory lending"). However, this factual issue was not before this Court on the motion to dismiss. Moreover, even if this issue had been before this Court, it would not now be properly before the Eleventh Circuit because whether there was a reduction in aggregate tax receipts would be a question of fact, not of law, as this Court has already recognized. Order at 29-30 (noting that Defendants' challenge that the Counties may have suffered a reduction in aggregate tax receipts "is a *factual* dispute, not a legal one").

decision was the distinguishing fact that Cook County admitted no aggregate tax loss. *Cty. of Cook v. Bank of Am. Corp.*, No. 14-C-2280 (Sept. 21, 2020), ECF No. 524, at 2.

Finally, though neither question presented by Defendants reaches the Court's ruling on the Counties' claims for foreclosure processing costs, it bears noting that Defendants point to absolutely *no authority* contrary to this Court's ruling that the Counties adequately alleged proximate cause. To the contrary, courts nationwide have found that allegations nearly identical to the Counties' are adequate to establish proximate cause at the pleading stage because such damages are indisputably within the "first step" for proximate cause analysis. *See, e.g., Prince George's Cty.*, 397 F. Supp. 3d at 760; *Cook/Wells Fargo*, 314 F. Supp. 3d at 984; *Montgomery Cty.*, 421 F. Supp. 3d at 187; *Cook/Bank of Am.*, 2018 WL 1561725, at *7 (N.D. Ill. Mar. 30, 2018); *Cook/HSBC*, 314 F. Supp. 3d at 950, 963 (N.D. Ill. 2018).

Thus, Defendants' arguments in opposition to this Court's ruling are weak and fail to demonstrate the requisite substantial ground for difference of opinion on the questions posed.

### III. An Immediate Appeal Will Not Materially Advance the Ultimate Termination of This Litigation.

"[W]here the same parties and issues would remain in district court

regardless of resolution of issues on appeal", certification under Section 1292(b) is inappropriate. *McFarlin*, 381 F.3d at 1259. An appeal does not advance the ultimate termination of the litigation unless it involves "resolution of a controlling legal question" that "would serve to avoid a trial or otherwise substantially shorten the litigation." *Id*.

An Eleventh Circuit ruling favorable to Defendants would not substantially shorten the litigation because the same parties and the same or similar issues would remain in district court. Whether the Counties have unfettered control over their property taxes is a question of fact inappropriate for interlocutory review. And even if the appellate court were to render an advisory opinion that a county's hypothetical control over property taxes *could* break the causal chain and defeat proximate causation, the Eleventh Circuit would still have to remand the case to the District Court to determine what, if any, control the Counties actually had. In other words, after what could be a lengthy appeal, the matter would still be in the hands of the District Court, where it would almost certainly be litigated by the parties.

Moreover, even if the Eleventh Circuit could rule in favor of Defendants on every issue surrounding the Counties' property tax-related damages—and it cannot because to do so would require either rooting through the record to decide a fact

question or issuing an advisory opinion —the foreclosure processing claims would survive.  Defendants' proposed questions "relate[] only to the [property tax claims], and answering [them] now would not get rid of [the Counties'] other claim[]." *McFarlin*, 381 F.3d at 1262.

Finally, Defendants' challenge relates only to the Counties' damages,  not to Defendants' liability.  Courts have generally held that questions about damages do not warrant interlocutory review and that only questions of liability tend to "materially advance" the litigation.  *See, e.g., Parker v. Four Seasons Hotels, Ltd.*, No. 12-cv-3207, 2015 WL 13413354, at *2 (N.D. Ill. Apr. 14, 2015) (holding that interlocutory review would not "materially advance" litigation because the issue to be considered on appeal related only to the availability of punitive damages, and "the issue of liability still remains to be determined").

## CONCLUSION

For all the foregoing reasons, the Counties respectfully request this Court deny the Motion in its entirety.

Dated: October 30, 2020

By:  */s/ David J. Worley*
David J. Worley
Georgia Bar No. 776665
David@ewlawllc.com
James M. Evangelista
Georgia Bar No. 707807

Jim@ewlawllc.com
Kristi Stahnke McGregor
Georgia Bar No. 674012
Kristi@ewlawllc.com
**Evangelista Worley LLC**
500 Sugar Mill Road
Suite 245A
Atlanta, GA 30350
Tel.: 404-205-8400
Fax: 404-205-8395

*Counsel for Plaintiffs*

Sanford P. Dumain
Peggy J. Wedgworth
Jennifer S. Czeisler
J. Birt Reynolds
Roy Shimon
John Hughes
**Milberg Phillips Grossman LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Telephone: (212) 594-5300

*Additional Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this document was prepared in compliance with Northern District of Georgia Local Rule 5.1C using Times New Roman 14-point font.


Dated: October 30, 2020                              */s/ David J. Worley*
                                                      David J. Worley
                                                      Ga. Bar No. 776665

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I served the above and foregoing
PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO
CERTIFY THE SEPTEMBER 18, 2020 ORDER FOR INTERLOCUTORY
APPEAL PURSUANT TO 28 U.S.C. §1292(b) on all parties by causing a true and
correct copy to be filed with the court's electronic filing system, which should
automatically send a copy to all counsel of record.


Dated: October 30, 2020                    */s/ David J. Worley*
                                           David J. Worley